IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 4:12-CV-2676 |
| | ) | |
| AMERICUS MORTGAGE | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ALLQUEST HOME MORTGAGE CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

**Munsch Hardt Kopf & Harr, P.C.**

Fred Wahrlich
Texas Bar No. 20666500
SD No. 248
700 Louisiana Street, Suite 4600
Houston, Texas 77002-2732
Tel:  (713) 222-1469
Fax: (713) 222-5869
fwahrlich@munsch.com
**ATTORNEYS-IN-CHARGE FOR
DEFENDANT Allquest Home
Mortgage Corporation**

**Of Counsel**

WEINER BRODSKY SIDMAN KIDER PC
Mitchel H. Kider (*Pro hac vice*)
David M. Souders (*Pro hac vice*)
Bruce E. Alexander (*Pro hac vice*)
1300 19th Street, N.W. 5th Floor
Washington, DC 20036
Tel:  (202) 628-2000
Fax:  (202) 628-2011
kider@wbsk.com
souders@wbsk.com
alexander@wbsk.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES................................................................. ii

INTRODUCTION .............................................................................. 1

BACKGROUND ................................................................................ 2

LEGAL STANDARD ........................................................................ 4

ARGUMENT..................................................................................... 5

    I.     The Successor Liability Theory is Barred by Collateral Estoppel.. 6

    II.    The Government Has Failed to Establish Successor Liability...... 10

    III.   No Actions or Omissions Are Alleged Against Allied
          Corporation.................................................................... 14

    IV.   The Government Has Failed to Plead its Claims with
          Particularity ................................................................... 15

CONCLUSION ............................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott Labs. v. Andrx Pharms., Inc.*,
  473 F.3d 1196 (Fed. Cir. 2007) ................................................................................... 8

*Allied Home Mortg. Corp. v. Donovan*,
  830 F. Supp. 2d 223 (S.D. Tex. 2011) ................................................................. passim

*Andrews v. Daw*,
  201 F.3d 521 (4th Cir. 2000) ...................................................................................... 4

*Apex Maritime Co. v. OHM Enters., Inc.*,
  No. 10-CV-8119, 2011 U.S. Dist. LEXIS 35707 (S.D.N.Y. Mar. 31, 2011) .............. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 2, 13, 15, 19

*Avondale Shipyards, Inc. v. Insured Lloyd's*,
  786 F.2d 1265 (5th Cir. 1986) .................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 13, 14

*Borsellino v. Goldman Sachs Grp., Inc.*,
  477 F.3d 502 (7th Cir. 2007) .................................................................................... 16

*Briggs v. Newberry Cnty. Sch. Dist.*,
  838 F. Supp. 232 (D.S.C. 1992) .................................................................................. 5

*Copeland v. Merril Lynch & Co.*
  47 F.3d 1415 (5th Cir. 1995) ...................................................................................... 7

*Day v. Moscow*,
  955 F.2d 807 (2d Cir. 1992) ........................................................................................ 5

*Enriquez-Gutierrez v. Holder*,
  612 F.3d 400 (5th Cir. 2010) ................................................................................... 4, 6

*Escalon v. World Grp. Secs. Inc.*,
  No. 5:07-CV-214, 2008 U.S. Dist. LEXIS 107196 (N.D. Tex. Nov. 14, 2008) ......... 11

*Ford Bacon & Davis, LLC v. Travelers Ins. Co.*,
  635 F.3d 734 (5th Cir. 2011) .................................................................................... 12

*Glassman v. Arlington Cnty, Va.*,
    628 F.3d 140 (4th Cir. 2010) ................................................................................. 15

*Gonzalez v. Bank of Am.*,
    No. 09-2946, 2011 U.S. Dist. LEXIS 16963 (S.D. Tex. Feb. 20, 2011) ..................... 17

*Hall v. St. Mary's Seminary & Univ.*,
    608 F. Supp. 2d 679 (D. Md. 2009) ........................................................................... 5

*In re BP P.L.C., Sec. Litig.*,
    843 F. Supp. 2d 712 (S.D. Tex. 2012) ...................................................................... 17

*In re Crude Oil Commodity Litig.*,
    No. 06-CV-6677, 2007 U.S. Dist. LEXIS 47902 (S.D.N.Y. June 28, 2007) .............. 17

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    538 F. Supp. 2d 367 (D. Mass. 2008) ....................................................................... 13

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) .................................................................................... 16

*Lummus Co. v. Comm. Oil Ref. Co.*,
    297 F.2d 80 (2d Cir. 1961) ......................................................................................... 9

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 10-CV-302, 2011 U.S. Dist. LEXIS 53359 (C.D. Cal. Apr. 20, 2011) .............. 13

*McKee v. Am. Transfer & Storage*,
    946 F. Supp. 485 (N.D. Tex. 1996) .......................................................................... 12

*Mudgett v. Paxson Machine Co.*,
    709 S.W.2d 755 (Tex. App. 1986) ............................................................................ 12

*N.E. Health Care Emps. Pension Fund v. Ernst & Young, LLP*,
    336 F.3d 495 (6th Cir. 2003) ..................................................................................... 5

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2006) ..................................................................................... 16

*Scott v. Kuhlmann*,
    746 F.2d 1377 (9th Cir.1984) ..................................................................................... 5

*Sitaram v. Aetna US Healthcare of N. Tex., Inc.*,
    152 S.W.3d 817 (Tex. App. 2004) ............................................................................ 12

iii

*Smith v. Grady*,
   411 F.2d 181 (5th Cir. 1969) ................................................................ 8, 9

*Soviet Pan Am Travel Effort v. Travel Comm., Inc.*,
   756 F. Supp. 126 (S.D.N.Y. 1991) ............................................................. 11

*State of New York v. Nat'l Serv. Indus., Inc.*,
   460 F.3d 201 (2d Cir. 2006) ..................................................................... 11

*United States ex rel. Hebert v. Dizney*,
   295 F. App'x 717 (5th Cir. 2008) ........................................................ 16, 17

*United States ex rel. Marlar v. BWXT Y-12, LLC*,
   525 F.3d 439 (6th Cir. 2008) ................................................................... 16

*United States ex rel. Pervez v. Beth Israel Med. Ctr.*,
   736 F. Supp. 2d 804 (S.D.N.Y. 2010) ....................................................... 15

*United States ex rel. Pilecki-Simko v. The Chubb Inst.*,
   No. 06-CV-3562, 2010 U.S. Dist. LEXIS 27187 (D.N.J. March 22, 2010) ............... 11

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.*,
   553 F.3d 869 (5th Cir. 2008) ................................................................... 16

*United States ex rel. Thomas v. Siemens, A.G.*,
   708 F. Supp. 2d 505 (E.D. Pa. 2010) ........................................................ 15

*United States v. Cypress Health Sys.*
   No. 1-09-CV-137, 2011 U.S. Dist. LEXIS 74768 (N.D. Fla. Jul 21, 2011) ............... 13

*United States v. Stauffer Chem. Co.*,
   464 U.S. 165 (1984) ........................................................................... 6, 10

*United Welding Supplies, Inc. v. Long*,
   2007 Bankr. LEXIS 4391 (S.D. Tex. Dec. 10, 2007) ...................................... 8

**STATUTES**

12 U.S.C. § 1833a ....................................................................... passim

18 U.S.C. § 1006 ............................................................................. 16

18 U.S.C. § 1014 ............................................................................. 16

28 U.S.C. § 1291 .............................................................................. 9

28 U.S.C. § 1292 .................................................................................................. 8

28 U.S.C. § 1292(a)(1) ..................................................................................... 8, 9

31 U.S.C. § 3729 ...................................................................................... 1, 2, 3, 16

Tex. Bus. Org. Code § 10.254(a) ....................................................................... 12

Tex. Bus. Org. Code § 10.254(b) ....................................................................... 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ...................................................................................... passim

Fed. R. Civ. P 12 ............................................................................................... 13

Fed. R. Civ. P. 12(b)(6) ................................................................................ 2, 4, 6

Fed R. Civ. P. 65(a) ........................................................................................... 8

## **INTRODUCTION**

Defendant, Allquest Home Mortgage Corporation, formerly known as Allied Home Mortgage Corporation (hereinafter "Allied Corporation" to facilitate comparison with the Amended Complaint), respectfully moves to dismiss the government's Second Amended Complaint (the "Complaint"). The Complaint nominally purports to allege violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA") and the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 1833a ("FIRREA"), but fails to state a viable claim under either statute.

The Complaint asserts that Allied Home Mortgage Capital Corporation, a co-defendant in this action (now known as Americus Mortgage Corporation, hereinafter "Allied Capital" to facilitate comparison with the Complaint), was at the heart of a long-standing fraudulent scheme concerning government insured mortgage loans. For its claims against Allied Corporation, the government relies on conclusory statements that Allied Corporation is the "successor entity to, and a mere continuation of Allied Capital." This reliance is, however, misplaced.

The government is collaterally estopped from trying to hold Allied Corporation liable for the acts and omissions of Allied Capital, because this precise issue was fully, fairly, and finally determined in a separate action in this Court. *See* 830 F. Supp. 2d 223, 232-33 (S.D. Tex. 2011). That action is now pending before Judge Miller. Additionally, the Complaint does not and cannot show that Allied Corporation should be liable as a successor to Allied Capital.

1

Fatally, the Complaint does not identify a single government insured loan, let alone a loan with a false statement made in connection with a claim for payment from the insurance fund.  Instead, the Complaint describes the participation of Allied Capital, not Allied Corporation, in the Federal Housing Administration ("FHA") mortgage insurance program, and only two supposedly false annual certifications made in connection with Allied Capital's, not Allied Corporation's,  participation in the program.  Such certifications, however, do not constitute violations of the FCA, even if false.

The Complaint also concedes that the government knew about Allied Capital's conduct, but allowed Allied Capital to continue originating FHA-insured loans.  Such knowledge and acceptance renders the FCA claim untenable against Allied Capital, as well as Allied Corporation.

As for FIRREA, no viable claim is stated because neither Allied Capital nor Allied Corporation is an employee, officer, or person connected with an institution that is covered by the statute.  Additionally, all of the conduct described in the Complaint predates the effective date of the statute on which the government relies.

Despite three attempts to construct and perfect its Complaint, the government fails to allege any false or fraudulent conduct with the specificity required by  Fed. R. Civ. P. 9(b).  The Complaint utterly fails to state a viable claim against Allied Corporation, and should be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

# BACKGROUND[1]

For the purposes of this Motion only, Allied Corporation accepts the factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allied Corporation is a corporation organized under the laws of the State of Texas, with its principal place of business in Houston, Texas. Compl. ¶ 18. Allied Corporation at all relevant times was a privately held mortgage banker, and was approved by HUD in 1992 to be a direct endorsement lender. Allied Corporation had the ability to "sponsor" loans originated by Allied Capital by underwriting and endorsing those loans for FHA insurance. Compl. ¶ 18.

The Complaint asserts that "Allied" — defined broadly to include both Allied Corporation and Allied Capital — violated the FCA and FIRREA. Compl. ¶ 1. In conclusory terms, the Complaint states that "hundreds of false certifications and other false statements" were submitted to HUD to obtain government-sponsored mortgage-insurance payments. *Id.* Tellingly, the Complaint never once specifies any false certification or statement actually made by Allied Corporation. Rather, the Complaint alleges a number of misdeeds by Allied Capital and unspecified statements and certifications that are purportedly false. Compl. ¶¶ 38-49, 51-54, 56-59, 61-71, 74-76, 83-90, 92-93, 96-97, 99-106. Even though the Complaint spans 40 pages and 146 paragraphs, it does not specify a single fact that gives rise to liability under the FCA or FIRREA. The Complaint utterly fails to state: who submitted statements or claims for

---

[1] In an effort to minimize repetition, Allied Corporation incorporates by reference, as if restated herein, the "Background" section of the Memorandum in Support of Motion to Dismiss that was filed concurrently by Allied Capital in this action.

payment to the government; when or where such statements or claims were submitted; what the statements or claims actually contained; or why the statements or claims were allegedly false.  The failure to provide these basic elements is remarkable given that the government has ready access to this information.

The only substantive assertions made against Allied Corporation are the conclusory allegations that it is liable as the successor to Allied Capital.  Compl. ¶¶ 19, 50, 132, 138.  These assertions do not state a valid claim for successor liability.  More importantly, the government should be collaterally estopped from trying to show that Allied Corporation is the successor to Allied Capital.

## LEGAL STANDARD

In an effort to minimize repetition, Allied Corporation incorporates by reference, as if restated herein, the "Legal Standard" section of the Memorandum in Support of Motion to Dismiss that was filed concurrently by Allied Capital in this action.

Additionally, this Court is not limited to the literal language of the Complaint in determining whether viable legal claims are asserted under Rule 12(b)(6).  For example, the Fifth Circuit has stated that a court may take judicial notice of the record from prior judicial proceedings.

> A court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom.  Additionally, we have held that district courts have the right to take notice of [their] own files and records in adjudicating cases between the same parties raising substantially similar issues as those addressed in previous cases.

*Enriquez-Gutierrez v. Holder,* 612 F.3d 400, 410-11 (5th Cir. 2010) (citations and quotations omitted); *accord Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)

("When ruling on a motion to dismiss, a court may consider facts outside the four corners of the complaint.  Specifically, the court may consider matters subject to judicial notice. . . of facts from a prior judicial proceeding.") (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *N.E. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984); *Briggs v. Newberry Cnty. Sch. Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992); *Hall v. St. Mary's Seminary & University*, 608 F. Supp. 2d 679, 684 (D. Md. 2009) ("In deciding Defendant's Motion to Dismiss, this Court must necessarily consider matters outside the pleadings.  We need not, however, convert Defendant's motion to dismiss into one for summary judgment, provided that we simply take judicial notice of facts from Plaintiff's prior judicial proceeding.").

## ARGUMENT

The government's claims against Allied Corporation are based upon the "mere continuation" doctrine of "successor liability."  *See* Compl. ¶ 19.  The Complaint's allegations regarding successor liability fail for two reasons.  First, this issue has already been decided against the government.  Consequently, the government should be collaterally estopped from re-litigating the same issue.  Second, the government's successor liability theory is not recognized in Texas, and Texas law governs because Allied Corporation and Allied Capital are both Texas corporations.

The Complaint also fails to state any valid claims against Allied Corporation because it fails to allege any actions by Allied Corporation.  At best, the Complaint vaguely alludes to both Allied Capital and Allied Corporation as "Allied."  *See, e.g.,*

5

Compl. at 2 (defining Allied Capital and Allied Corporation collectively as "Allied"); ¶ 11 ("Allied operated with impunity for many years . . . ."). Further, the government's conflation of the two entities, as well as its failure to allege any actions by Allied Corporation, both violate Rule 9(b)'s heightened pleading standard for fraud. Since the Complaint's bare allegations against Allied Corporation do not state a valid claim within the meaning of Rule 12(b)(6), the Complaint should be dismissed, with prejudice, as to Allied Corporation.

## I.     The Government's Successor Liability Theory is Barred by Collateral Estoppel

The doctrine of mutual defensive collateral estoppel bars the government from re-litigating the issue of whether Allied Corporation is the successor entity to, or a mere continuation of, Allied Capital. In *Allied Home Mortg. Corp. v. Donovan*, Judge Harmon ordered a preliminary injunction against HUD's suspension of Allied Corporation. 830 F. Supp. 2d 223, 232-33 (S.D. Tex. 2011). Judge Harmon found that Allied Corporation could not be held liable under a successor liability theory for the obligations of Allied Capital, because successor liability, as asserted by the government, does not exist between the two entities under Texas law. *Id.* This Court may take judicial notice of the proceedings before Judge Harmon. *Enriquez-Gutierrez,* 612 F.3d at 410-11

"[T]he doctrine of mutual defensive collateral estoppel is applicable against the Government to preclude re-litigation of the same issue already litigated against the same party in another case involving virtually identical facts." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 169 (1984). Four conditions must be met before collateral estoppel

6

may be applied to bar re-litigation of an issue previously decided by a court of competent

jurisdiction:

> (1) the issue under consideration is identical to that litigated in the prior
> action; (2) the issue was fully and vigorously litigated in the prior action;
> (3) the issue was necessary to support the judgment in the prior case; and
> (4) there is no special circumstance that would make it unfair to apply the
> doctrine.

*Copeland v. Merril Lynch & Co.* 47 F.3d 1415, 1422 (5th Cir. 1995).

Here, whether Allied Corporation is the successor to Allied Capital is the identical

issue addressed by Judge Harmon. *Allied Home Mortg.*, 830 F. Supp. 2d at 228-34.  In

fact, the majority of Judge Harmon's legal analysis is devoted to this issue.  *Id*. at 232-

34.  Further, there is no question that the issue of successor liability was fully and

vigorously litigated in front of Judge Harmon.  HUD previously suspended Allied

Corporation's authority to originate FHA-insured mortgage loans in reliance on the initial

Complaint filed by the government in this action.  *Id.* at 228.  Judge Harmon conducted a

full evidentiary hearing.  *Id.* at 225.  She expressly noted:  "The current suspensions are

dependent on 'the outcome of the United States' lawsuit. . . ."  *Id.* at 225.[2]

While findings made in a preliminary injunction proceeding may not always be

final rulings, collateral estoppel may be applied where the court's preliminary injunction

ruling can be described as "sufficiently firm" so as to warrant issue preclusion.

Restatement (Second) Judgments §13 ("[F]or purposes of issue preclusion. . . , 'final

---

[2] The "United States' lawsuit" referenced in Judge Harmon's opinion is this matter, which was pending in
the U.S. District Court for the Southern District of New York at the time Judge Harmon issued her
opinion.  On September 4, 2012, Judge Marrero in the Southern District of New York granted Allied
Capital's Motion to Transfer to this Court.  *See* Dkt. No. 32.

judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.").  In determining whether a ruling was "sufficiently firm," courts consider whether the party seeking to avoid the preclusive effect of a preliminary injunction ruling has had a full opportunity to present all crucial evidence and witnesses, whether the court issued an opinion, and whether the decision was avowedly tentative.  *See Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1204 (Fed. Cir. 2007) ("Factors to consider in determining whether a decision was adequately deliberated and firm include whether the parties were fully heard, the court supported its decision with a reasoned opinion, and the decision was subject to appeal.").

The injunction entered by Judge Harmon was immediately appealable.  28 U.S.C. § 1292(a)(1) ("the courts of appeals shall have jurisdiction of appeals from:  (1) Interlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions . . . .").  *See also Smith v. Grady*, 411 F.2d 181, 186 (5th Cir. 1969) ("A preliminary injunction issued in accordance with Rule 65(a) is appealable as an interlocutory decision under 28 U.S.C. § 1292.").  Accordingly, Judge Harmon's ruling should bar further litigation on whether Allied Corporation is the successor to Allied Capital.

Nevertheless, some courts have defined a "finality" standard even more broadly in the context of collateral estoppel, asking simply whether there "are any legitimate reasons for relitigating an issue previously adjudicated . . . ."  *United Welding Supplies, Inc. v. Long*, 2007 Bankr. LEXIS 4391, at *9 (S.D. Tex. Dec. 10, 2007).  The Second Circuit's standard is illustrative:

> Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291, ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.  "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Lummus Co. v. Comm. Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961).  Here, there are no reasons to re-litigate the issue of successor liability.  The facts alleged in the Complaint are identical to those before Judge Harmon:

> The government has intervened in a *qui tam* fraud action filed in the Southern District of New York, Case No. 11-cv-05443, in which it filed [a] complaint-in-intervention and sues, *inter alia*, [Allied Capital] and [Allied Corporation] as Capital's successor in interest.  The suspensions of [Allied Corporation] and its CEO, Hodge in this action, occurred contemporaneously with the filing of the government's complaint [] on November 1, 2011.  ***The current suspensions are dependent on 'the outcome of the United States' lawsuit*** . . . .

*Allied Home Mortg.*, 830 F. Supp. 2d at 228 (emphasis added).

While the Fifth Circuit has expressed "reservations" about this standard, it has only done so for orders not subject to appeal.  *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1270 (5th Cir. 1986) ("We are not aware of any federal appellate decision which has applied preclusion to a prior nonfinal ruling as to which appellate review was unavailable. . . .").  That concern is not applicable here.  The injunction entered as a result of Judge Harmon's ruling on successor liability was immediately appealable.  28 U.S.C. § 1292(a)(1).  *See also Grady*, 411 F.2d at 186.

9

Moreover, there are no new facts or special circumstances asserted by the government that would make it unfair to apply collateral estoppel. Despite two amendments to the Complaint, and a year having passed since the ruling by Judge Harmon, the government has failed to supplement or change its allegations regarding successor liability. The procedural posture here is similar to that in *Stauffer Chemical*:

> In approving the defensive use of collateral estoppel against the Government . . . we first determined that there was mutuality of parties . . ., that the issue sought to be relitigated was identical to the issue already unsuccessfully litigated . . ., and that there had been no change in controlling facts or legal principles since the [previous matter].

464 U.S. at 169. Indeed, it would be unfair to allow the government to re-litigate the issue of successor liability after the government failed to utilize its right to appeal Judge Harmon's prior determination.

The issue of successor liability has already been litigated and decided against the government, and there are no circumstances making the application of collateral estoppel unfair. The government should therefore be barred from asserting successor liability as a basis for liability against Allied Corporation. *Id.* at 173 ("When estoppel is applied in a case where the Government is litigating the same issue arising under virtually identical facts against the same party . . . the Government's argument loses its force.").

## II.     <u>The Government Has Failed to Establish Successor Liability</u>

Even if the Court does not apply the doctrine of collateral estoppel, the Complaint still does not state a valid claim for Allied Corporation to be liable as the successor to Allied Capital. The government's case against Allied Corporation is based wholly on the "mere continuation" theory of successor liability. *See, e.g.,* Compl. ¶¶ 19, 50, 132, 138.

10

Both Allied Capital and Allied Corporation are, however, Texas corporations.  Compl. ¶¶ 17-18.  Under Texas law Allied Corporation is **not** the "successor" to Allied Capital.

Successor liability must be determined by the law of Texas, because both companies are Texas corporations, and because Texas law explicitly governs their intercompany transactions.  The asset purchase agreement between Allied Corporation and Allied Capital specifically designates Texas in its choice of law clause.  *Allied Home Mortg. Corp.*, 830 F. Supp. 2d at 232-33 (finding that the asset purchase agreement should be construed under Texas law).  *See Escalon v. World Grp. Secs. Inc.*, No. 5:07-CV-214, 2008 U.S. Dist. LEXIS 107196, at \*32 (N.D. Tex. Nov. 14, 2008) ("Under Texas law, the buying and selling corporations' purchase agreement's choice of law provision controls the applicability of successor liability doctrines."); *Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991) ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.").  *See also State of New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 207-10 (2d Cir. 2006) (failing to find successor liability under state law for alleged violations of the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.*, because "a mere federal interest in uniformity is insufficient to justify displacing state law in favor of federal common law.") (citations omitted); *United States ex rel. Pilecki-Simko v. The Chubb Inst.*, No. 06-CV-3562, 2010 U.S. Dist. LEXIS 27187, at \*50-53 (D.N.J. March 22, 2010) (applying state law to successor liability for false claims).

11

"Texas law does not generally recognize successor liability for subsequent purchasers of corporate assets."  *McKee v. Am. Transfer & Storage*, 946 F. Supp. 485, 487 (N.D. Tex. 1996).  *See also Ford Bacon & Davis, LLC v. Travelers Ins. Co.*, 635 F.3d 734, 737 (5th Cir. 2011) ("Where, as here, the entity purchasing assets has expressly not assumed liability for the assets it purchased, such liability will not extend under 'operation of Texas law.'").  Under Texas law, "a person acquiring [all or part of the property of a domestic entity] may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person."  Tex. Bus. Org. Code § 10.254(b).  Texas law also states that an asset purchase "is not a merger or conversion for any purpose."  Tex. Bus. Org. Code § 10.254(a).

Moreover, Texas has rejected the "mere continuation" exception to the Restatement's general principle that successor liability does not attach to an entity purchasing another entity's assets.  *Mudgett v. Paxson Machine Co.*, 709 S.W.2d 755, 758 (Tex. App. 1986) ("Certainly if the de facto merger doctrine is contrary to the public policy of our state, so must be the mere continuation doctrine.  In any event, we decline to impose liability upon an acquiring corporation under either theory in the face of clear legislative intent to the contrary.").  *See also Sitaram v. Aetna US Healthcare of N. Tex., Inc.*, 152 S.W.3d 817, 826 n.8 (Tex. App. 2004) (noting the Texas legislature's elimination of the Restatement's general exceptions of de facto merger and "mere continuation").

The government has failed to state any fact showing Allied Corporation should be liable as a successor to Allied Capital, other than the bald statement that Allied

12

Corporation is a "mere continuation" of Allied Capital.  The Complaint's allegations of

successor liability are nothing more than "labels and conclusions, and a formulaic

recitation of the elements" that cannot sustain a cause of action under Rule 12.  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the government's "threadbare

recitals" of successor liability, "supported by mere conclusory statements," must be

dismissed.  *Iqbal*, 556 U.S. at 678.  The language and logic of *United States v. Cypress*

*Health Sys.* is instructive:

> And, although plaintiff does allege that the current administrator and a few
> key personnel of Cypress Florida also happen to be members or executive
> officers of Cypress Wyoming, Plaintiff does not allege any facts which
> would establish that the two entities are indeed the same entity.  Without
> such a showing, and without any independent allegations against Cypress
> Wyoming, Plaintiff has failed to show that Cypress Wyoming should be
> joined as a party in this action.

No. 1:09-CV-137, 2011 U.S. Dist. LEXIS 74768, at *15-16 (N.D. Fla. Jul. 21, 2011); *see*

*also Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-CV-302, 2011 U.S. Dist.

LEXIS 53359, at *25 (C.D. Cal. Apr. 20, 2011) (finding bare allegation of successor-in-

interest liability insufficient); *In re Pharm. Indus. Average Wholesale Price Litig.*, 538 F.

Supp. 2d 367, 391 (D. Mass. 2008) ("Each wrongful act alleged by the Relator implicates

only Ortho-McNeil, not Johnson & Johnson, the corporate parent . . . .  Because

[plaintiff] has not set forth facts that support a cause of action against Johnson &

Johnson, the claims against Johnson & Johnson are dismissed.").

   Tellingly, the government fails to allege any fact regarding the Asset Purchase

Agreement between Allied Capital and Allied Corporation.  Pursuant to that Agreement,

Allied Corporation acquired branch offices from Allied Capital.  *Allied Home Mortg.*,

830 F. Supp. 2d at 232.  In that matter, Judge Harmon ruled that the very same allegations proffered here failed to establish successor liability.  *Id.* at 233 ("While the government may have vaguely implied there was a fraudulent conveyance of Capital's assets to Corp. to escape Capital's liability, it did not produce evidence of such.").[3] Nothing has changed.  The allegations still fail to establish any basis to ascribe successor liability to Allied Corporation for any of Allied Capital's alleged conduct.

## III.   <u>No Actions or Omissions Are Alleged Against Allied Corporation</u>

The Complaint fails to allege a single submission or statement of any kind to any federal agency by Allied Corporation.  Notably, nowhere in the Complaint does the government allege that Allied Corporation participated in any action, let alone one that would subject it to liability under the FCA or FIRREA.  *See Allied Home Mortg.*, 830 F. Supp. 2d at 234 ("As noted there are plenty of broad-sweeping accusations against, but no evidence of wrongdoing by, [Allied Corporation] since its acquisition of [Allied Capital].").

The government's "obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555.  Here, the Complaint has failed to even allege a formulaic recitation of the elements of any claim

---

[3] The government makes no allegations that the asset transfer between Allied Corporation and Allied Capital was a fraudulent conveyance.  Instead, the government alleges that:  (a) Allied Capital was a correspondent lender (Compl. ¶¶ 5, 17); (b) Allied Corporation was a direct endorsement lender (Compl. ¶ 18); (c) HUD discontinued the correspondent lender program in 2010 (Compl. ¶¶ 5, 17); and (d) the transfer of assets from Allied Capital to Allied Corporation occurred in late 2010 and early 2011 (Compl. ¶ 19).  There is no plausible inference of fraud from these facts.  Instead, the plausible inference is that Allied Capital sold its assets to Allied Corporation because Allied Capital's business model had been rendered obsolete by HUD's decision to discontinue the correspondent lender program.

against Allied Corporation.  Rather, the Complaint fails to allege *any* acts or omissions

taken by Allied Corporation or any agent or representative of Allied Corporation.  *See,*

*e.g., United States ex rel. Thomas v. Siemens, A.G.*, 708 F. Supp. 2d 505, 515-16 (E.D.

Pa. 2010) (dismissing claims against a parent corporation where the complaint only

asserted the company was the parent organization, and contained no factual allegations

regarding the parent corporation's direct involvement in any purported fraud).

The Complaint states nothing more than the fact that the government seeks relief

from Allied Corporation.  Consequently, "the complaint has alleged — but it has not

'show[n]' — that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679.  The Complaint

is simply an "unadorned, the-defendant-unlawfully-harmed-me accusation," and such

deficient allegations cannot state a valid claim.  *Id.* at 678.  *See also Glassman v.*

*Arlington Cnty., Va.*, 628 F.3d 140, 145 (4th Cir. 2010) ("To determine whether a

plausible claim has been asserted, we consider the *factual* allegations of the complaint to

determine whether they plausibly show an entitlement to relief.") (emphasis in original).[4]

## IV.    The Government Has Failed to Plead its Claims with Particularity

Since the False Claims Act "is an anti-fraud statute . . . claims brought under the

[False Claims Act] fall within the express scope of Rule 9(b)."  *United States ex rel.*

*Pervez v. Beth Israel Med. Ctr.*, 736 F. Supp. 2d 804, 810 (S.D.N.Y. 2010); *see also*

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir.

2008).  Not only are FCA claims subject to Rule 9(b), but FIRREA claims are too.

---

[4]  In an effort to minimize repetition, Allied Corporation incorporates by reference, as if restated herein,
Sections I, II and III of the Argument in the Memorandum in Support of Motion to Dismiss that was filed
concurrently by Allied Capital in this action.

Sections 1006 and 1014 are both in Chapter 47 of Title 18, which is titled "Fraud and False Statements."  Section 1006 requires the "intent to defraud," and § 1014 requires the actor to "knowingly make [a] false statement or report. . . ."

Any action that sounds in fraud, such as the claims asserted in the Complaint, is subject to the heightened pleading requirements of Rule 9(b):  "By its terms, Rule 9(b) applies to 'all averments of fraud.'  This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action."  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2006).

Rule 9(b) requires the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Hebert v. Dizney,* 295 F. App'x 717, 721 (5th Cir. 2008).  This heightened pleading standard is to ensure that fraud claims are "responsible and supported, rather than defamatory and extortionate."  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citations omitted); *see also Rombach,* 355 F.3d at 171 ("Rule 9(b) serves to . . . prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.") (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)); *United States ex rel. Marlar v. BWXT Y-12, LLC,* 525 F.3d 439, 445 (6th Cir. 2008) ("Rule 9(b) is also meant to protect defendants from 'spurious charges of immoral and fraudulent behavior.'").

The Complaint's sparse allegations against Allied Corporation fail to satisfy any of Rule 9(b)'s requirements.  The only allegations made specifically about Allied

16

Corporation are conclusory statements that Allied Corporation is the successor entity to Allied Capital.

Moreover, the government improperly conflates the actions of Allied Capital and Allied Corporation by its use of the term "Allied," which it defines in the Complaint to refer to both Allied Capital and Allied Corporation collectively.  Compl. at 2.  "[B]road claims against numerous defendants without identifying specific actions of specific individuals at specific times" fail to meet Rule 9(b)'s standard.  *Hebert*, 295 F. App'x at 722.  "General allegations, which lump all defendants together and fail to segregate the alleged wrongdoing of one from those of another, do not meet the requirements of Rule 9(b)."  *In re BP P.L.C., Sec. Litig.*, 843 F. Supp. 2d 712, 746 (S.D. Tex. 2012).  *See also Gonzalez v. Bank of Am.*, No. 09-2946, 2011 U.S. Dist. LEXIS 16963, at *6 (S.D. Tex. Feb. 20, 2011) ("[Plaintiff] lumps [Defendant's] name into broad conclusory accusations giving [Defendant] no indication of what actions it committed that require a defense.  Controlling parent is not useful to establish liability; being a parent and being liable for a subsidiary's acts are distinct."); *In re Crude Oil Commodity Litig.*, No. 06-CV-6677, 2007 U.S. Dist. LEXIS 47902, at *19 (S.D.N.Y. June 28, 2007) ("where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement.").

The Complaint fails to allege any false or fraudulent statements, or false submission of any type whatsoever, made by Allied Corporation; fails to describe who at Allied Corporation made the statements; fails to state where or when those statements

were made; and fails to explain why any of these unspecified statements were allegedly fraudulent.  *See Apex Maritime Co. v. OHM Enters., Inc.*, No. 10-CV-8119, 2011 U.S. Dist. LEXIS 35707, at *5-6 (S.D.N.Y. Mar. 31, 2011) (stating that a fraud claim must "inform each defendant of the nature of his alleged participation in the fraud.").

These are the exact type of defamatory and extortionate allegations Rule 9(b) was designed to prevent.  Indeed, damage has already been done by such spurious allegations, which is well-demonstrated by HUD's actions immediately following the government's filing of this Complaint, where HUD suspended Allied Corporation's operations based on the specious allegations contained in this Complaint.  *See generally, Allied Home Mortg.*, 830 F. Supp. 2d at 233.  Tellingly, Judge Harmon enjoined that suspension shortly thereafter, precisely because of the lack of detail and effort put forth by the Complaint in this action and in HUD's suspension action.

> The government has not produced evidence demonstrating that [Allied Corporation] has violated the law since it acquired most of [Allied Capital's] assets.  Indeed it acknowledged at the hearing that the history of [Allied Corporation] since its acquisition of assets of [Allied Capital] is short and that evidence about it thus far is limited.  Nevertheless [Allied Corporation's] figures in HUD's Credit Watch or Neighborhood Watch performance numbers reflect it is better than average in comparison to other FHA-insured mortgage lenders across the country.  Moreover the vague and conclusory nature of the allegations . . . in the *qui tam* complaint . . . serves to obfuscate which corporation is responsible for what violations.

*Allied Home Mortg.*, 830 F. Supp. 2d at 234.

The Complaint has failed to allege any specific facts about Allied Corporation regarding any of the claims it has asserted against Allied Corporation.  All claims should, therefore, be dismissed as against Allied Corporation.

## <u>CONCLUSION</u>

The Federal Rules of Civil Procedure require the allegation of plausible claims to relief, and also require any allegations sounding in fraud to be pled with specificity.  The government's broad-sweeping claims of wrongdoing here do not meet the standards set by the Supreme Court in *Twombly* and *Iqbal*, and fail to meet the heightened pleading standard required under Rule 9(b).  Because the government makes no allegations regarding Allied Corporation's activities anywhere in the Complaint, the government has failed to state a claim against Allied Corporation.  The Complaint should be dismissed, with prejudice, as to Allied Corporation.

DATE:  November 20, 2012                 Respectfully submitted,

**Munsch Hardt Kopf & Harr, P.C.**

By: _____/s/_____
Fred Wahrlich
Texas Bar No. 20666500
SD No. 248
700 Louisiana Street, Suite 4600
Houston, Texas 77002-2732
Tel:  (713) 222-1469
Fax: (713) 222-5869
fwahrlich@munsch.com

**ATTORNEYS-IN-CHARGE FOR
DEFENDANT** *AllQuest Home Mortgage
Corporation*

**Of Counsel**

Mitchel H. Kider
David M. Souders
Bruce E. Alexander
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street, N.W. 5th Floor
Washington, DC 20036
Tel:  (202) 628-2000
Fax:  (202) 628-2011
kider@wbsk.com
souders@wbsk.com
alexander@wbsk.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 20th day of November, 2012, a copy of the foregoing

Memorandum in Support of Motion to Dismiss was served upon all parties and counsel

of record via the Court's CM/ECF system.


 /s/
Bruce E. Alexander