IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | Case No. 4:12-CV-2676 |
| ) | |
| AMERICUS MORTGAGE ) | |
| CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' MEMORANDUM
IN SUPPORT OF MOTION TO STRIKE**

Defendants Americus Mortgage Corporation (f/k/a Allied Home Mortgage Capital Corporation, hereinafter "Allied Capital"), AllQuest Mortgage Corporation (f/k/a Allied Home Mortgage Corporation, hereinafter "Allied Corporation"), Jim C. Hodge, and Jeanne L. Stell, by their attorneys, respectfully submit this Memorandum in Support of their Motion to Strike certain assertions from the government's Second Amended Complaint (the "Complaint"). The Complaint contains many assertions that have absolutely no bearing upon the subject matter of the litigation and are unfairly prejudicial. Such allegations should be stricken as "redundant, immaterial, impertinent, or scandalous," as permitted by Rule 12(f), Fed. R. Civ. P.

**BACKGROUND**

The Complaint asserts that Mr. Hodge and Allied Home Mortgage Capital Corporation, a co-defendant in this action (now known as Americus Mortgage

Corporation, hereinafter "Allied Capital" to facilitate comparison with the Complaint), were at the heart of a long-standing fraudulent scheme concerning government insured mortgage loans.  According to the Complaint, Mr. Hodge violated, and used Allied Capital, Allied Corporation, and Ms. Stell to violate the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a.

The essence of the claims that the defendants supposedly "originated loans out of hundreds of 'shadow' branches that were not approved by HUD [the Department of Housing and Urban Development], then submitted those loans to HUD using one of the unique branch identification numbers [] assigned to a HUD-approved branch."  Compl. ¶¶ 111 – 125 (the First, Second, and Third Claims). The Complaint also alleges that the defendants "made statements to HUD with the intent to defraud or deceive HUD into approving branches."  Compl. ¶¶ 126 – 141 (Fourth and Fifth Claims).  Further, the Complaint alleges that the defendants "failed to implement an internal quality control plan . . . ."  Compl. ¶¶ 142 – 146 (the Seventh Claim).

The government seeks civil penalties and treble damages under the FCA "for each of Allied's defaulted loans." Compl. ¶ 115.  The government seeks indemnification for defaulted loans originated from the allegedly "shadow branches."  Compl. ¶¶ 119, 120.  The government seeks penalties under FIRREA "for each of the loans originated out of a shadow branch that is in default but on which no claim has been made" (Compl. ¶ 125), and "for each of the hundreds of false certifications and other false statements submitted to HUD."  Compl. ¶ 130, 136, 141, and146.  The Complaint does not, however, identify

even one loan that has defaulted.  Further, the Complaint does not contain a single factual allegation about a supposedly false statement:  (a) made in connection with a claim for FHA insurance funds; or (b) made by Mr. Hodge about shadow branches or quality control.

Instead, the Complaint makes several allegations against Mr. Hodge that amount to nothing more than *ad hominem* attacks.  These attacks concern his purported mistreatment of employees and branch managers (Compl. ¶¶ 7, 11, 55 - 82, 108-109), but none of these assertions are supported by any facts showing Mr. Hodge's actual involvement in any false claim or false report submitted to the government.

The Complaint also makes wholly irrelevant allegations regarding Mercantile Insurance & Fidelity Company ("Mercantile"), a business allegedly owned by Mr. Hodge that supposedly provided insurance bonds without being licensed.  (Compl. ¶¶ 105, 106).

Through these personal attacks on Mr. Hodge, the government unfairly attempts to portray Mr. Hodge as a "bad" person, and by implications all of the other defendants with whom and through whom he allegedly worked.  None of these extraneous facts, however, are even remotely connected to the theories of recovery that are asserted in the Complaint.

## LEGAL STANDARD

Rule 8 requires that pleadings in federal court set forth "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Rule 12(f) correspondingly authorizes a court to strike pleadings that are "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  *See also, In*

*re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979) (court possesses "ample discretion . . . to order stricken from the complaint any redundant or immaterial matter.").

The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Doe I v. Roman Catholic Diocese*, No. H-05-1047, 2006 U.S. Dist. LEXIS 58347, at *6 (S.D. Tex. Aug. 18, 2006) (quotations omitted).

"Immaterial" matter is defined as that which has "no essential or important relationship to the claim for relief or the defenses being pleaded." *Marceaux v. Lafayette Consol. Gov't*, No. 6:12-CV-01532, 2012 U.S. Dist. LEXIS 150922, at *4 (W.D. La. Oct. 18, 2012). Immateriality may be established by showing that the challenged assertions "have no possible bearing upon the subject matter of the litigation." *Bayou Fleet P'ship, LLC v. St. Charles Parish,* No. 10-1557, 2011 U.S. Dist. LEXIS 73867, at *16 (E.D. La. Jul. 8, 2011) (citations omitted).

"Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Marceaux*, 2012 U.S. Dist. LEXIS 150922, at *4.

Lastly, "scandalous" matter is that which "improperly casts a derogatory light on someone, most typically on a party to the action." *Id.* at *4. The purpose of striking scandalous matter from the Complaint is, in part, to avoid "prejudice to a party by preventing a jury from seeing the offensive matter . . . ." *Id.* at *5.

## ARGUMENT

A number of assertions in the Complaint are immaterial, impertinent, and/or scandalous, within the meaning of Rule 12(f).  These assertions bear no essential or important relationship to the claim for relief.

More specifically, the assertions found in ¶¶ 7, 11, 55 - 82, 105, 106, 108, and 109 of the Complaint are wholly unrelated to the government's claims, as stated on pages 31 – 38 of the Complaint.  These assertions serve no purpose other than to cast Mr. Hodge in a derogatory light, and by implication, all of the other defendants.

Paragraph Nos. 105 and 106 of the Complaint attempt to portray Mr. Hodge, through Allied Capital, as someone who constantly deceived state regulators.  As an example, the government asserts that Mercantile, an entity owned by Mr. Hodge, issued bonds for Allied Capital's lending operations.  These bonds were required to satisfy state regulatory requirements for lending, but were supposedly deceptive.  Mercantile was, allegedly, "never licensed to do business in any state and was little more than a shell company."  The government's characterization of Mercantile, however, is simply wrong.  Surplus lines insurance carriers — such as Mercantile — need not necessarily be licensed within a state to offer insurance products.  *See, e.g.,* 28 TAC § 15.2 (defining an "surplus lines insurer" as "[a]n unlicensed insurer").  Consequently, these assertions are not only irrelevant and immaterial to any claim asserted in the Complaint (see pages 31 – 38), but they are clearly scandalous and inaccurate.

Additionally, Paragraph Nos. 11 and 108 – 109 of the Complaint assert that Mr. Hodge:  created a "culture of corruption" at Allied Capital; "intimidated

5

employees;" "silenced former employees;" and "concealed corruption," as well as "persistently monitored and intimidated" employees.

Further, Paragraph Nos. 7, and 55 – 82 of the Complaint assert that Mr. Hodge supposedly lied to branch managers about his misuse of their income, and supposedly left branch managers unfairly exposed financially for branch expenses, claiming he: "spent the salary and commissions owed to his branch managers" (Compl. ¶ 7); "summarily" closed the branches, leaving the managers "on the hook" for the branches' financial obligations (*id.*); and "told multiple lies" to Allied Capital's branch managers about branch reserve accounts, and failed to supervise or assume financial responsibility for branch expenses (Compl. ¶¶ 55 – 82).

The foregoing assertions are wholly unrelated to the government's FCA and FIRREA claims. These assertions do not assist in the resolution of this case. Rather, these assertions only unfairly prejudice all of the defendants. Thus, these assertions should be stricken from the Complaint pursuant to Rule 12(f), Fed. R. Civ. P.

## **CONCLUSION**

The Complaint incorporates many assertions that have no bearing upon any claim asserted by the government. These claims are also unfairly prejudicial, and are clearly included in the Complaint for that very reason. The government should not be allowed to conduct a smear campaign against Mr. Hodge by asserting so many things that are immaterial, impertinent, scandalous, and even incorrect. The

defendants respectfully request their Motion to Strike be granted, pursuant to Rule 12(f), Fed. R. Civ. P.

DATE:  November 21, 2012

        Respectfully submitted,

        **Munsch Hardt Kopf & Harr, P.C.**

        By: _____/s/Fred Wahrlich_____
        Fred Wahrlich
        Texas Bar No. 20666500
        SD No. 248
        700 Louisiana, Suite 4600
        Houston, Texas 77002-2732
        Tel:  (713) 222-1469
        Fax: (713) 222-5869
        fwahrlich@munsch.com

        **ATTORNEYS-IN-CHARGE FOR DEFENDANT** *Jim C. Hodge*

**Of Counsel**

Mitchel H. Kider
David M. Souders
Bruce E. Alexander
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street, N.W. 5th Floor
Washington, DC 20036
(202) 628-2000
(202) 628-2011 (Fax)
kider@wbsk.com
souders@wbsk.com
alexander@wbsk.com