UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

        Plaintiff-Intervenor,           12 Civ. 02676 (GCH)

    v.                                              ECF

ALLQUEST HOME MORTGAGE
CORPORATION, f/k/a ALLIED HOME
MORTGAGE CORPORATION, AMERICUS
MORTGAGE CORPORATION, f/k/a ALLIED
HOME MORTGAGE CAPITAL
CORPORTATION, JIM C. HODGE, and
JEANNEE L. STELL

        Defendants.

------------------------------------------------------------------ x

## Memorandum of Law in Opposition to Defendants' Motion to Strike

KENNETH MAGIDSON
United States Attorney for the
Southern District of Texas
86 Chambers Street
New York, New York 10007
Telephone: 212.637.2678
Fax: 212.637.2686
E-mail: jeannette.vargas@usdoj.gov

JEANNETTE A. VARGAS
JAMES NICHOLAS BOEVING
Special Assistant United States Attorneys

    – Of Counsel –

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ................................................................................................................................ 5

    I.    DEFENDANTS' MOTION TO STRIKE IS WITHOUT MERIT ............... 5

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Anderson v. Commissioner*,
   250 F.2d 242 (5th Cir. 1957) ....................................................................................... 9

*Augustus v. Board of Public Instruction of Escambia County, Florida*,
   306 F.2d 862 (5th Cir. 1962) ....................................................................................... 4

*Barnes v. District of Columbia*,
   --- F.R.D. -- 2012 WL 4466669 (D.D.C. 2012) ............................................................ 3

*Clark v. Milam*,
   152 F.R.D. 66 (S.D.W.Va. 1993) .................................................................................. 3

*Dupell v. K. Hovnanian Companies, LLC*,
   No. 3:12-CV-6, 2012 WL 1831484 (N.D.W.Va. May 18, 2012) ................................. 4

*F.D.I.C. v. Niblo*,
   821 F. Supp. 441 (N.D. Tex. 1993) .............................................................................. 3

*FRA S.p.A. v. Surg-O-Flex of America, Inc.*,
   415 F. Supp. 421 (S.D.N.Y. 1976) ............................................................................... 4

*Fleischer v. A.A.P., Inc.*,
   180 F. Supp. 717 (S.D.N.Y. 1959) ............................................................................... 8

*Ground Zero Museum Workshop v. Wilson*,
   813 F. Supp. 2d 678 (D. Md. 2011) .............................................................................. 6

*Heller Finance, Inc. v. Midwhey Powder Co.*,
   883 F.2d 1286 (7th Cir. 1989) ...................................................................................... 3

*Herceg v. Hustler Magazine, Inc.*,
   583 F. Supp. 1566 (S.D. Tex. 1984) .......................................................................... 6-7

*Housing Opportunities Project For Excellence, Inc. v. Key Colony Number 4 Condominium Association, Inc.*,
    510 F. Supp. 2d 1003 (S.D. Fla. 2007) ........................................................................ 7

*Judicial Watch, Inc. v. Department of Commerce*,
    224 F.R.D. 261 (D.D.C. 2004) ....................................................................................... 3

*Kinee v. Abraham Lincoln Federal Savings and Loan Association*,
    365 F. Supp. 975 (E.D. Pa. 1973) .................................................................................. 8

*Kosinski v. Commissioner*,
    541 F.3d 671 (6th Cir. 2008) ......................................................................................... 9

*Nwachukwu v. Karl*,
    216 F.R.D. 176 (D.D.C. 2003) ...................................................................................... 4

*Odom v. Southeast Supply Header, LLC*,
    No. 09-0147-WS-N, 2009 WL 1658961 (S.D. Ala. June 11, 2009) ....................... 4, 7-8

*Oliner v. McBride's Industrial, Inc.*,
    106 F.R.D. 14 (S.D.N.Y. 1985) .................................................................................... 3

*S.E.C. v. Lorin*,
    869 F. Supp. 1117 (S.D.N.Y. 1994) .............................................................................. 3

*SEC v. Pentagon Capital Management PLC*,
    612 F. Supp. 2d 241 (S.D.N.Y. 2009) ........................................................................... 9

*SEC v. Savino*,
    No. 01 Civ. 2438 (GBD), 2006 WL 375074 (S.D.N.Y. Feb. 16, 2006) .................. 9-10

*TM, LLC v. Anderson*,
    No. 2:11-CV-00071, 2012 WL 4483180 (E.D.N.C. Sept. 27, 2012) ........................ 3-4

*U. S. Dental Institute v. America Association of Orthodontists*,
    396 F. Supp. 565 (N.D. Ill. 1975) ................................................................................. 4

*Vakharia v. Little Co. of Mary Hospital & Health Care Centers*,
   2 F. Supp. 2d 1028 (N.D.Ill. 1998) ................................................................................. 3

*Waste Management Holdings, Inc. v. Gilmore*,
   252 F.3d 316 (4th Cir. 2001) ........................................................................................ 3

*Williams v. Hawkeye Community College*,
   494 F. Supp. 2d 1032 (N.D. Iowa 2007)....................................................................... 6

**Rules & Statutes**

Fed. R. Civ. P. 12(f)................................................................................................*passim*

12 U.S.C. § 1833a............................................................................................................. 1

31 U.S.C. §§ 3729, *et seq* ................................................................................................. 1

28 Tex. Admin. Code § 15.2 ............................................................................................. 8

## PRELIMINARY STATEMENT

The United States of America (the "Government" or "Plaintiff"), by and through its attorney, the United States Attorney for the Southern District of Texas, submits this memorandum of law in opposition to Defendants' motion to strike.

The Government filed the instant action against the Defendants under the False Claims Act, as amended, 31 U.S.C. §§ 3729, *et seq.* ("FCA"), and the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 1833a ("FIRREA"), arising from fraud and misrepresentation against the United States Department of Housing and Urban Development ("HUD") in connection with the Defendants' residential mortgage business.  As detailed in the Government's Complaint, the Defendants orchestrated an ongoing fraud against HUD in order to fraudulently obtain and maintain approval to participate in the HUD/FHA insured lending program.  Defendants now seek to strike certain allegations from the Government's Complaint.  As described below, their motion is without merit.

Defendants' motion is wholly conclusory and unsubstantiated.  In particular, although Defendants seek to strike more than thirty paragraphs of the Complaint, they have completely failed to carry their heavy burden to prove that the allegations sought to be stricken are both immaterial and prejudicial.  This alone justifies denying their unsupported motion.  In any event, the allegations sought to be stricken are plainly material to the Government's claims in this matter.  Thus, Defendants' motion should be denied.

## BACKGROUND

The Government brought the instant action against the Defendants, alleging that they defrauded the United States in connection with their participation in the HUD/FHA mortgage insurance program. *See, e.g.*, Compl. ¶ 1. Specifically, the Government alleges that the Defendants: (i) originated loans out of branches that had not been approved by HUD for participation in the FHA lending program (a "shadow branch"), *see id.* ¶¶ 6, 38-54, 112-15, 117-19, 122-24; (ii) submitted false statements in order to gain and/or maintain HUD approval for branch operations, *see id.* ¶¶ 7, 55-82, 127-29, 132-35; (iii) failed to implement and maintain a quality control program as HUD required, *see id.* ¶¶ 8-9, 83-91, 143-45; and (iv) concealed branch sanctions and employee convictions from HUD in order to maintain HUD approval, *see id.* ¶¶ 10, 92-107, 127-29. Defendants were able to perpetrate their scheme to defraud by ignoring applicable rules and regulations, *see id.* ¶¶ 45-46, through outright lies and deception, *see id.* ¶¶ 6-7, 49-50, 52-53, 55, 62-63, 74-75, 91, 93, 96-107, and by intimidating and threatening employees, *see id.* ¶¶ 11, 108-110. The Government seeks civil penalties and treble damages under the FCA, *see* Compl. ¶ 115, indemnification for actual losses, *see id.* ¶ 120, and civil penalties under FIRREA, *see id.* ¶¶ 125, 130, 136, 141,146.

Defendants filed the instant motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure on November 21, 2012. Their motion, in a cursory and conclusory manner, argues that certain paragraphs of the Complaint should be stricken.

## LEGAL STANDARD

The Federal Rules of Civil Procedure reflect the policy that pleadings should be treated liberally, and that a party should have the opportunity to support its contentions at trial. *See Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 14, 17 (S.D.N.Y. 1985). As a result, a motion to strike under Rule 12(f) is an "exceptional remedy" that is "strongly disfavored." *Barnes v. District of Columbia*, --- F.R.D. ----, 2012 WL 4466669, at *4 (D.D.C. 2012); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) ("Rule 12(f) motions are generally viewed with disfavor…"); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (noting "the general rule that motions to strike are disfavored"); *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D.W.Va. 1993) ("A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted."); *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) ("motions under Rule 12(f) are viewed with disfavor and are infrequently granted"); *S.E.C. v. Lorin*, 869 F. Supp. 1117, 1120 (S.D.N.Y. 1994) ("Rule 12(f) motions are not favored and will not be granted routinely"). The movant "bears the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, *and* unduly prejudicial." *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D.Ill. 1998) (emphasis added). This is a "formidable burden." *Judicial Watch, Inc. v. Dep't of Commerce*, 224 F.R.D. 261, 264 (D.D.C. 2004); *TM, LLC v. Anderson*, No. 2:11–CV–00071, 2012 WL 4483180, at *11 (E.D.N.C. Sept. 27, 2012) (describing the burden as

"heavy"); *Dupell v. K. Hovnanian Cos.*, LLC, No. 3:12–CV–6, 2012 WL 1831484, at *4 (N.D.W.Va. May 18, 2012) (describing the burden as "substantial").

"In considering a motion to strike, the court will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denying the motion to strike." *Nwachukwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003) (citing cases). Thus, a motion to strike should be denied unless the allegations in question have no possible relation to controversy. *See Augustus v. Bd. of Public Instruction of Escambia County, Fla.*, 306 F.2d 862 (5th Cir. 1962); *U. S. Dental Institute v. Am. Ass'n of Orthodontists*, 396 F. Supp. 565, 583 (N.D. Ill. 1975) (motions to strike are generally not granted unless the allegations are so immaterial that they can have no possible bearing on the issues at trial and unless their presence in the complaint prejudices defendants, especially in complex cases). Indeed, "[u]nless it is clear that the portion of the pleading has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant, the complaint should remain intact." *FRA S.p.A. v. Surg-O-Flex of Am., Inc.*, 415 F. Supp. 421, 427 (S.D.N.Y. 1976). That a movant disputes factual allegations or legal conclusion is insufficient to justify a motion to strike. *See Odom v. Southeast Supply Header, LLC*, No. 09–0147–WS-N, 2009 WL 1658961, at *1 (S.D. Ala. June 11, 2009) ("mere presence of legal and factual disputes" does not justify "the extreme and disfavored remedy" of striking pleadings). As set forth below, Defendants have not and cannot carry their burden.

**ARGUMENT**

**DEFENDANTS' MOTION TO STRIKE IS WITHOUT MERIT**

Although Defendants' assert that numerous paragraphs in the Complaint should be stricken (*see* Br. at 3, citing paragraphs 7, 11, 55-82, 105-06, and 108-09), Defendants have failed to carry their heavy burden of supporting their motion because their motion is vague and overly broad, and, in addition Defendants have failed to explain why the referenced paragraphs of the Complaint are immaterial and how inclusion of those same paragraphs in the Complaint prejudice them.

As a threshold matter, Defendants' motion is overly broad, it fails to identify with any specificity the portions of the paragraphs that they find objectionable, and it lacks any explanation that would justify striking any of the paragraphs referenced.  Although Defendants ask this court to strike in total more than thirty detailed paragraphs of the Complaint, they have failed to explain in any meaningful way how these numerous paragraphs could be considered immaterial and prejudicial.  Indeed, their entire bases for striking these paragraphs comprise a total of less than two pages of their conclusory and unsubstantiated brief.  *See* Br. at 5-6.

For instance, in a single, eight-line paragraph of their memorandum of law, Defendants lump together almost 30 paragraphs of the Complaint and request that they be stricken, *see* Br. at 6 (referencing paragraphs 7 and 55-82 of the Complaint), yet they have neither explained why these paragraphs are not relevant to the Government's theory of the case, nor articulated how the allegations in these paragraphs are prejudicial to them.  These paragraphs explain, with detailed examples from numerous years, how the

5

Defendants falsely certified that they complied with HUD's requirement that they pay the operating costs of branch offices. For instance, the Complaint recounts examples from 2000, 2001, 2003, 2006, 2007, 2008, 2009, and 2011 that illustrate Defendants' ongoing failure to pay branch operating expenses despite certifying to the contrary to HUD. *See* Compl. ¶¶ 56-57, 61, 69-71, 74, 76-82. The Complaint further alleges, in these same paragraphs, that Defendants were aware of their obligation in light of their prior experience with HUD audits and agreeing to a consent decree, *see id.* ¶¶ 57, 61, 71, 74, but continued in this unlawful course knowingly and intentionally, *see id.* ¶¶ 72-73, 76. Indeed, Defendants even lied to HUD about this practice. *See id.* ¶ 75. Despite the well-pled allegations in the Complaint, which comprise more than seven pages, Defendants' motion to strike fails to address these allegations, much less explain how they are immaterial or prejudicial.[1]

Such overly broad and unspecified complaints are insufficient to support a motion to strike. *See, e.g.*, *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 690 (D. Md. 2011) ("Plaintiffs' motion to strike is overly broad and will be denied"); *Williams v. Hawkeye Cmty. Coll.*, 494 F. Supp. 2d 1032, 1042 (N.D. Iowa 2007) (denying motion to strike where defendant did not "explain with any particularity exactly why such portions of the Amended Complaint are immaterial or impertinent"); *Herceg v. Hustler Magazine, Inc.*, 583 F. Supp. 1566, 1568 (S.D. Tex. 1984) (denying motion to

---

[1] Indeed, Defendants offer separate definitions for "immaterial," "impertinent," and "scandalous," *see* Br. at 4, yet they have failed to describe how any of the paragraphs they seek to have stricken fall into in of these categories, thus leaving the Government and the Court to merely guess at how Defendants seek to carry their burden.

6

strike that was unspecific and overly broad).  As such, Defendants' motion should be denied.

In any event, it is clear from the Complaint that Defendants' motion is without merit.  Defendants group their motion into three separate complaints, each consisting of a single conclusory and vague paragraph.  Their first "substantive" paragraph identifies as supposedly objectionable paragraphs 105-06 of the Complaint.  Defendants' second single-paragraph complaint concerns paragraphs 11 and 108-09 of the Complaint.  And their final conclusory paragraph relates to paragraphs 7 and 55-82 of the Complaint.  Defendants' have failed to establish that any of these paragraphs are immaterial or prejudicial.

*First*, Defendants assert that paragraphs 105 and 106 should be stricken, claiming that these two paragraphs, which discuss Mercantile Insurance & Fidelity Company, "attempt to portray Mr. Hodge, through Allied Capital, as someone who constantly deceived state regulators."  *See* Br. at 5.  Defendants only support for their argument, however, is to assert that the Complaint's characterization Mercantile "is simply wrong."  *See id.*  This argument, however, is simply a dispute of the underlying facts of these two paragraphs and the law that would apply to them.  A dispute over the accuracy of facts (or even law) is not a sufficient basis to support a motion to strike.  *See Hous. Opportunities Project For Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp. 2d 1003, 1015 (S.D. Fla. 2007) (argument that certain allegations were untrue was an insufficient basis to strike them from the complaint); *Odom*, 2009 WL 1658961, at *1 (S.D. Ala. June 11, 2009) ("mere presence of legal and factual disputes" does not

justify "the extreme and disfavored remedy" of striking pleadings); *Kinee v. Abraham Lincoln Fed. Sav. and Loan Ass'n*, 365 F. Supp. 975, 982 (E.D. Pa. 1973) (claim of defendants that some of the allegations in the complaint were "patently untrue" and therefore impertinent and scandalous "is not a proper 12(f) ground, and verges on impertinence itself"); *Fleischer v. A.A.P., Inc.*, 180 F. Supp. 717, 721 (S.D.N.Y. 1959) (suppsoed falsity of matter alleged in complaint is not ground for striking allegations from complaint).[2]  Thus, Defendants allegations concerning paragraphs 105 and 106 of the Complaint do not support their motion.

*Second*, Defendants complain that paragraphs 11 and 108-09 should be stricken. Although Defendants note that these paragraphs describe (correctly) that Defendant Hodge promoted a culture of corruption at Allied Capital and Allied Corporation, intimidated and silenced employees, and concealed such corruption, Defendants nowhere explain how these allegations are either immaterial or prejudicial.  *See* Br. at 5-6.  As such, Defendants have necessarily failed to carry their heavy burden.

In any event, the allegations in paragraphs 11 and 108-109 are plainly material to the Government's Complaint.  The Complaint makes clear not only that Defendants

---

[2]   In addition, in disputing the facts of these paragraphs, Defendants reference Texas law for the definition of surplus line insurance carriers.  *See* Br. at 5 (citing 28 Tex. Admin. Code § 15.2).  Defendants have failed to explain the relevance of this reference to their motion other than to claim that this definition purportedly shows the Government's description of Mercantile is wrong.  In any event, Defendants' citation to this statute is immaterial for the instant motion.  Defendants have to comply with all relevant state laws in order to participate in the HUD/FHA mortgage insurance program, not just the laws of Texas.  The Complaint plainly alleges that Defendants have failed to comply with state laws in certain respects, and this incident is but one such example.  This too further justifies denying Defendants' motion to strike.

8

routinely lied to the Government, but also that they made concerted efforts to conceal the existence and scope of their fraud from the Government. *See, e.g.*, Compl. ¶¶ 7, 55-82, 91-107. The Complaint further alleges that Hodge, as President and CEO of the corporate defendants, was personally involved in this deception. *See, e.g.*, Compl. ¶¶ 91 (Hodge directing employee to lie to HUD), 96 (Hodge directed Allied Capital to hire convicted felons, which was concealed from HUD), 109 (Hodge required employees to sign broad confidentiality agreements and sued former employees for even the slightest perceived breach, and Stell told employees that all they could say to others was "just what a good company it is"). The Defendants' substantial efforts to conceal their scheme included and were furthered by Hodge's deliberate intimidation of employees, which in turn included unprecedented monitoring and harassment of employees. *See id.* ¶¶ 11, 108-09. These allegations go directly to Defendants' intent, as the Government's response to Defendants' motions to dismiss makes clear. *See* Opposition to Defendants' Motions to Dismiss ("Govt. Br.") at Pt.I.B; *see also Kosinski v. Comm'r*, 541 F.3d 671, 679 (6th Cir. 2008) ("government may prove fraudulent intent by circumstantial evidence, and we can infer fraud from any conduct, the likely effect of which would be to mislead or to conceal") (internal quotations omitted); *Anderson v. Comm'r*, 250 F.2d 242, 250 (5th Cir. 1957) ("[R]epeated understatements in successive years when coupled with other circumstances showing an intent to conceal or misstate taxable income present a basis on which [a court] may properly infer fraud."); *SEC v. Pentagon Capital Mgmt. PLC*, 612 F. Supp. 2d 241, 264 (S.D.N.Y. 2009) (strong inference of intent found where defendants, *inter alia*, made efforts to conceal their fraudulent scheme from clients); *SEC*

9

*v. Savino*, No. 01 Civ. 2438 (GBD), 2006 WL 375074, at *14 (S.D.N.Y. Feb. 16, 2006) (a defendant's intent to defraud was "further demonstrated" by his efforts to "conceal their scheme after [the client] began to investigate [the defendant's] trades"). Accordingly, Defendants' complaints concerning paragraphs 7, 108, and 109 of the Complaint should be rejected.

*Finally*, Defendants claim that paragraphs 7 and 55-82 of the Complaint should be stricken. *See* Br. at 6. Despite asking this court to strike almost 30 paragraphs of the Complaint, Defendants' brief contains absolutely no explanation of why such a drastic remedy should be employed, and Defendants, moreover, have made no efforts to describe the portions of these paragraphs which they find immaterial and prejudicial.[3] Defendants cannot discharge their formidable burden in such circumstances.

In any event, paragraphs 7 and 55-82 should not be stricken from the Complaint because the allegations in these paragraphs cannot be shown to be either immaterial or prejudicial. One of the central allegations in the Complaint is that the Defendants lied to HUD about its branch operations in an effort to fraudulently maintain HUD approval. The Complaint makes clear that one of the fundamental rules of the HUD insurance

---

[3] It is telling that although Defendants complain that paragraphs 7 and 55-82 should be stricken, they only directly refer to two of them (again without explain how they are immaterial or prejudicial). A majority of this section of their brief refers to paragraph 7. There is also one passing reference to the fact that Hodge "told multiple lies" to branch managers as to why their funds were not available, which is found in paragraph 78. The only other mention, even in summary form, of these paragraphs is found in Defendants' statement that these paragraphs include allegations that Hodge "failed to supervise or assume financial responsibility for branch expenses," which is followed by a misleading citation to paragraphs 55-82. *See* Br. at 6. It is clear from the Complaint that the corporate defendants had an obligation to pay for such expenses, which Hodge, as the companies' President and CEO, was aware of and intentionally flouted.

10

program is that a lender must be approved to originate, purchase, hold, or sell HUD/FHA-insured loans. *See* Compl. ¶ 28. Each branch had to obtain separate HUD approval, which required each branch to certify that it "meets all HUD/FHA requirements" and included a specific certification that the lender "will pay all operating costs of the branch office." *Id.* ¶ 29; *see also id.* ¶ 30. The paragraphs sought to be stricken by Defendants concern their failure to comply with this requirement. In other words, these paragraphs demonstrate why the representations made in the branch certifications are false. The Defendants' unlawful and fraudulent practices are in fact captured by paragraph 7, which Defendants seek to strike, and which provides:

> Even when Allied Capital sought HUD approval for its branches, it lied to obtain that approval. Each time Allied Capital opened a new branch and applied for HUD approval, it falsely certified that the branch office met all HUD/FHA requirements and, specifically, that Allied Capital would pay all operating costs of the branch office. For the last ten years, however, Allied Capital, and later its successor, Allied Corporation, maintained a corporate policy of requiring branch managers to assume financial responsibility for their branches. Allied Capital, and later, Allied Corporation, thus operated their branches like franchises, collecting revenue while the branches were profitable, then closing them without notice when they were not, leaving the branch managers liable for the branch's financial obligations. Well aware that this practice was prohibited by HUD, Allied's Executive Vice President, Jeanne Stell, instructed branch managers how to answer questions from HUD auditors, and acknowledged in an email that she instructed someone else to sign the certifications because she knew that they were false. More recently, after the Government's original complaint was filed, Hodge spent the salary and commissions owed to his branch managers, using that money to fund loans after Allied Corporation's warehouse lines of credit were frozen, then summarily closed the remaining branches, leaving the branch managers both on the hook for financial obligations and without any money to pay them.

*Id.* ¶ 7. Defendants' deceptive and fraudulent practices are further detailed in paragraphs 55 through 82. Indeed, these paragraphs detail how Defendants (1) failed to pay the operating expenses of its branches, *see* Compl. ¶¶ 56-57, 65, 71, 74-78; (2) shifted that

11

burden to the individual branches and branch managers at great personal expense to those individuals and lied to these individuals about the monies available to them, *see id.* ¶¶ 68-70, 74, 77-71; (3) instructed employees to impede any Government audit and lie to the Government about this practice, *see id.* ¶¶ 59-60; and, (4) knowingly and intentionally submitted false certifications, *see id.* ¶¶ 72-73, 75, 82.  The Government's Fourth Claim plainly includes Defendants' false certification that it paid the expenses of its branches. *See id.* ¶¶ 126-30.  Indeed, the Government's opposition to Defendants' motions to dismiss makes clear that these allegations are central to the Government's FIRREA claims in this action.  *See* Govt. Br. at Pt.IV.A.  Accordingly, Defendants' motion lacks merit and should be denied.[4]

---

[4] In the event that the Court concludes that certain paragraphs identified by Defendants are both immaterial and prejudicial, the Court, rather than strike such paragraphs, should grant the Government leave to amend the Complaint to address the Court's concerns for the same reasons stated in the Government's opposition to the Defendants' motions to dismiss.  *See* Govt. Br. at Pt.VII.

12

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike should be denied.

                    Respectfully Submitted,

                    KENNETH MAGIDSON
                    UNITED STATES ATTORNEY

                    *s/*
                    Jeannette A. Vargas
                    James Nicholas Boeving
                    Special Assistant United States Attorneys
                    86 Chambers Street, 3rd Floor
                    New York, New York 10007
                    Telephone: (212) 637-2678/2748
                    Fax: (212) 637-2686
                    Email: jeannette.vargas@usdoj.gov
                    Email: james.n.boeving@usdoj.gov