IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff-Intervenor, ) <br> ) <br> v. ) <br> ) <br> AMERICUS MORTGAGE ) <br> CORPORATION, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION 4:12-CV-2676 <br> **ORAL ARGUMENT** <br> **REQUESTED** |

### DEFENDANT ALLQUEST HOME MORTGAGE CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

**Munsch Hardt Kopf & Harr, P.C.**

Fred Wahrlich
Texas Bar No. 20666500
SD No. 248
700 Louisiana Street, Suite 4600
Houston, Texas 77002-2732
Tel: (713) 222-1469
Fax: (713) 222-5869
fwahrlich@munsch.com
**ATTORNEYS-IN-CHARGE FOR DEFENDANT Allquest Home Mortgage Corporation**

**Of Counsel**

WEINER BRODSKY KIDER PC
Mitchel H. Kider (*Pro hac vice*)
David M. Souders (*Pro hac vice*)
Bruce E. Alexander (*Pro hac vice*)
1300 19th Street, N.W. 5th Floor
Washington, D.C. 20036
Tel: (202) 628-2000
Fax: (202) 628-2011
kider@thewbkfirm.com
souders@thewbkfirm.com
alexander@ thewbkfirm.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ................................................................................................. 1

ARGUMENT ......................................................................................................... 2

    I.    There Is No General Federal Common Law of Successor Liability ..................................................................................... 3

    II.    The Government Is Collaterally Estopped on the Successor Liability Issue ................................................................................ 8

    III.    The Business Operations Were Substantially Different ................ 11

    IV.    No Facts Show That Allied Corporation Is Liable ........................ 13

CONCLUSION ................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allied Corp. v. Donovan*,
  830 F. Supp. 2d 223 (S.D. Tex. 2011) .......................................................................... 4

*B.F. Goodrich v. Betkoski*,
  99 F.3d 505 (2d Cir. 1996) .......................................................................................... 7

*Burks v. Lasker*,
  441 U.S. 471 (1979) .................................................................................................... 3

*Erie R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ...................................................................................................... 4

*Escalon v. World Grp. Secs. Inc.*,
  No. 5:07-CV-214, 2008 U.S. Dist. LEXIS 107196 (N.D. Tex. Nov. 14, 2008) ........... 4

*Fed. Deposit Ins. Corp. v. McFarland*,
  243 F.3d 876 (5th Cir. 2001) .................................................................................. 7, 8

*O'Melveny & Myers v. Fed. Deposit Ins. Corp.*,
  512 U.S. 79 (1994) .............................................................................................. 4, 5, 7

*State of New York v. Nat'l Serv. Indus., Inc.*,
  352 F.3d 682 (2d Cir. 2003) ................................................................................... 6, 7

*United States ex rel. Fisher v. Network Software Assocs., Inc.*,
  180 F. Supp. 2d 192 (D.D.C. 2002) ............................................................................ 4

*United States ex rel. Greschrey v. Generations Healthcare, LLC*,
  No. 10 C 2413, 2012 U.S. Dist. LEXIS 116431 (N.D. Ill. Aug. 14, 2012) ................. 4

*United States ex rel. Pilecki-Simko v. The Chubb Ins.*,
  No. 06-CV-3562, 2010 U.S. Dist. LEXIS 27187 (D.N.J. Mar. 22, 2010) .................... 4

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ........................................................................................... 4, 5, 6, 7

*United States v. Kimbell Foods, Inc.*,
  440 U.S. 715 (1979) ................................................................................................ 5, 6

*United States v. Texas*,
  507 U.S. 529 (1993) .................................................................................................... 3

**STATUTES**

12 U.S.C. § 1833a .................................................................................................................. 1

18 U.S.C. § 1004 ................................................................................................................... 1

18 U.S.C. § 1006 ................................................................................................................... 1

29 U.S.C. § 185 ..................................................................................................................... 6

31 U.S.C. § 3729 ................................................................................................................... 1

42 U.S.C. §9601 .................................................................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11(b)(2) ......................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 2

## INTRODUCTION

The Government has not shown, and cannot show, that Allied Corporation should be responsible for the actions of Allied Capital under a substantial continuity theory of successor liability.[1] Contrary to what the Opposition (ECF #69) argues, there is no *general* federal common law of substantial continuity liability. Rather, the Supreme Court has explained that state law should govern questions of intra-corporate or successor liability, unless the federal statute in question addresses the issue, such as in the labor context. Since there is nothing in the FCA or FIRREA on this topic, Texas law governs whether Allied Corporation is responsible for Allied Capital's actions.[2]

Under Texas law, the Complaint has not asserted, and the Government cannot show, that Allied Corporation is responsible for Allied Capital. Judge Harmon has addressed this issue, thoroughly. She properly found that Allied Corporation is not responsible for Allied Capital's actions.

The Opposition attempts to mislead this Court into believing that the Government did not have a full and fair opportunity to address this issue, but the publicly docketed

---

[1] Unless otherwise stated, the definitions and abbreviations used in the Memorandum in Support of Motion to Dismiss, ECF #57, are also used herein. For example, the term "Allied Corporation" is used to facilitate comparison with the Opposition (ECF #69, the "Opp.") filed by the Government on December 21, 2012. The current name of Allied Corporation is AllQuest Home Mortgage Corporation. Similarly, the term "Allied Capital" is also used to facilitate comparison, but the current name of Allied Capital is Americus Mortgage Corporation.

[2] The term "FCA" refers to the False Claims Act, 31 U.S.C. § 3729 *et seq.* Similarly, "FIRREA" refers to the Financial Institutions Reform, Recovery and Enforcement Act on which the Government relies, 12 U.S.C. § 1833a, incorporating 18 U.S.C. §§ 1006 and 1004.

records in this Court expose this attempted misdirection. The Government had full and fair notice of this issue, had an opportunity to address the issue before Judge Harmon, and then tactically chose to forego an appeal. The Government is now collaterally estopped from raising the issue of successor liability. Allied Corporation is not responsible for Allied Capital, and should be dismissed from this lawsuit with prejudice.

## ARGUMENT

The Complaint asserts that Allied Capital was at the heart of a long-standing fraudulent scheme concerning FHA-insured mortgage loans. For its claims against Allied Corporation, the Complaint simply asserts that Allied Corporation is the "mere continuation of Allied Capital." *See, e.g.*, Compl. ¶ 19. On the basis of this conclusory assertion, the Opposition argues: (a) Allied Corporation is liable as a successor to Allied Capital under the federal common law theory of substantial continuity; and (b) the Government is not collaterally estopped on this issue.[3] Opp. at 68-79.

The Opposition is wrong, however, as a matter of law. Texas law governs the issue of Allied Corporation's liability for Allied Capital. Under Texas law, Allied Corporation is not liable.

---

[3] It must be noted that both the Complaint and Opposition rely exclusively on the substantial continuity theory in an attempt to hold Allied Corporation responsible for the actions of Allied Capital. There are no assertions in the Complaint, and no arguments in the Opposition about any alter ego theory of liability or piercing any corporate veil. This is not surprising. No such assertions or arguments could, in good faith, be made. Just as importantly, the Government cannot now rely on anything but its substantial continuity theory. Since this theory is without merit, no valid claims have been stated against Allied Corporation within the meaning of Rule 12(b)(6), as explained herein.

2

Additionally, the Complaint has not actually asserted, and cannot assert, in good faith that the operations of Allied Capital and Allied Corporation were substantially similar. Instead, the Complaint admits that Allied Capital was a loan correspondent, whereas Allied Corporation was a sponsoring mortgagee under HUD guidelines and regulations. Compl. ¶¶ 5, 17-18. The business operations of a loan correspondent are much different than the overall operations of a sponsoring mortgagee, even if the functions of an individual loan officer in each type of organization may be substantially similar. Moreover, the Complaint has not asserted any facts showing that Allied Corporation, separate and apart from Allied Capital, violated the FCA or FIRREA.

I.      **There Is No General Federal Common Law of Successor Liability**

Supreme Court precedent indicates that Texas law governs whether Allied Corporation is liable for the actions of Allied Capital. Generally, when Congress has not addressed the issue of intra-corporate liability, such as parent/subsidiary or succession, the statute in question must directly address the issue in order to overturn state common-law principles.

> CERCLA is thus like many another congressional enactment in giving no indication 'that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute,' *Burks v. Lasker*, 441 U.S. 471, 478, 60 L. Ed. 2d 404, 99 S. Ct 1831 (1979), and the failure of the statute to speak to a matter as fundamental as the liability implications of corporate ownership demands application of the rule that 'in order to abrogate a common-law principle, ***the statute must speak directly to the question addressed by the common law***,' *United States v. Texas*, 507 U.S. 529, 534, 123 L. Ed. 2d 245, 113 S. Ct. 1631 (1993) (internal quotation marks omitted).

*United States v. Bestfoods*, 524 U.S. 51, 63 (1998) (emphasis added).[4]  *See also O'Melveny & Myers v. Fed. Deposit Ins. Corp.*, 512 U.S. 79, 83, 85-89 (1994) ("'There is no federal general common law.'") (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), and generally repudiating the contention that FIRREA requires application of federal, rather than state liability rules).

The language and logic of the *Bestfoods* opinion governs.  There is nothing in the FCA or FIRREA addressing corporate successor liability.  Further, there are no appellate court decisions addressing successor liability under these statutes.[5]

Given the dearth of statutory language and case law authority, Texas law governs. Under Texas law, Allied Corporation cannot be the legal successor to Allied Capital, as Judge Harmon of this Court has already found.  *Allied Corp. v. Donovan*, 830 F. Supp. 2d 223, 232-33 (S.D. Tex. 2011); *see also Escalon v. World Grp. Secs. Inc.*, No. 5:07-CV-214, 2008 U.S. Dist. LEXIS 107196, at *32 (N.D. Tex. Nov. 14, 2008) ("Under Texas

---

[4]  "CERCLA" is the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§9601 *et seq*.  Even though *Bestfoods* does not directly address successor liability in the precise context applicable to Allied Corporation, the language and logic of the opinion should control on the determination of liability, if any, under the theory of "substantial continuity of operations."

[5]  Only three trial court opinions have been found that address the issue of successor liability in the context of the FCA.  The Opposition relies on *United States ex rel. Greschrey v. Generations Healthcare, LLC*, No. 10 C 2413, 2012 U.S. Dist. LEXIS 116431 (N.D. Ill. Aug. 14, 2012) and *United States ex rel. Fisher v. Network Software Assocs., Inc.*, 180 F. Supp. 2d 192 (D.D.C. 2002).  To the contrary of those two cases is *United States ex rel. Pilecki-Simko v. The Chubb Inst.*, No. 06-CV-3562, 2010 U.S. Dist. LEXIS 27187, at *50-53 (D.N.J. Mar. 22, 2010), which relied on New Jersey law to determine successor liability.  All three of these opinions concerned *qui tam* actions, but none contained any analysis of the successor liability issue.

law, the buying and selling corporations' purchase agreement's choice of law provision controls the applicability of successor liability doctrines.").

Disregarding *Bestfoods*, the Opposition argues that the federal law of successor liability controls. Opp. at 68-69. The Opposition relies on *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979), arguing "it is well-established that courts apply federal common law to determine successor liability." Opp. at 68. A careful reading of *Kimbell* and the case law cited in the Opposition reveals, however, that the Government has misstated the applicable law.

First, the *Kimbell* opinion actually says that the appropriate rule of decision must be determined by the presiding court. 440 U.S. at 718. That is, should state law be adopted as the appropriate rule for a federal statute, or should a new federal rule be created? *Id*. In *Kimbell*, and more broadly in *Bestfoods*, the Supreme Court held that state law should govern. *Id*. and 524 U.S. at 61–64. More specifically in *Bestfoods*, the Supreme Court held that state law governs intra-corporate successor liability if the federal statute in question does not address the issue. 524 U.S. at 61 – 64. *See also O'Melveny & Myers*, 512 U.S. at 87 ("[T]his is not one of those cases in which judicial creation of a special federal rule would be justified. Such cases are, as we have said in the past, 'few and restricted.'") (citations omitted).

Second, to the extent that the Opposition seeks to characterize *Kimbell* as stating that the federal law of substantial continuity is mandated, the Opposition is clearly wrong. The language of *Kimbell* does not support such a proposition. To the contrary, the Supreme Court in *Kimbell* held that state law governs. 440 U.S. at 718 ("[W]e adopt

5

state law as the appropriate federal rule for establishing the relative priority of these competing federal and private liens."). And, even if *Kimbell* could be read as the Government contends, which it cannot, the later decision in *Bestfoods* has effectively overruled *Kimbell*, or clearly clarified and limited its scope.

The Second Circuit has explained there is no general federal common law mandating the substantial continuity theory for successor liability in light of *Bestfoods*. In *State of New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682 (2d Cir. 2003), the Second Circuit specifically repudiates the "substantial continuity" theory for successor liability as a matter of federal common law, ***generally***.[6] 352 F.3d at 686. The Second Circuit observed that the substantial continuity doctrine is recognized in the ***labor law context*** because of Section 301 of the Labor Management Relations Act (codified at 29 U.S.C. § 185). The Second Circuit explains:

> Within federal law, the substantial continuity doctrine is well established in the area of labor law. However, the labor law cases are particular to the labor law context ***and therefore have not been and cannot easily be extended to other areas of federal common law***. In *Textile Workers Union v. Lincoln Mills*, the Supreme Court held that section 301 to the Labor Management Relations Act "authorizes federal courts to fashion a body of federal law for the enforcement of [] collective bargaining agreements." Thus, ***the rules that federal courts and the Supreme Court have adopted in the labor law context do not necessarily reflect general federal common law but rather represent law fashioned for the purpose of enforcing section 301***.

---

[6] Similar to *Bestfoods*, *National Service Industries* deals with CERCLA, and does not directly address substantial continuity liability in the precise context applicable to this case. The language and logic of the opinion, however, directly address the issue, and provide a persuasive explanation that "substantial continuity of operations" is ***not*** part of the general federal common law.

6

352 F.3d at 686 (citations omitted) (emphasis added).

In the context of distinguishing the "substantial continuity doctrine" for labor cases, *National Service Industries* overturns *B.F. Goodrich v. Betkoski*, 99 F.3d 505 (2d Cir. 1996), as wrongly decided in reliance on *Bestfoods*. *Betkoski* is important to the substantial continuity theory. The Second Circuit had held in *Betkoski* that a company, which had purchased the assets of another company that was liable under CERCLA, was in turn liable under the federal common law ***substantial continuity*** theory. This is precisely the same argument the Government is making about Allied Corporation. The *Bestfoods* opinion stated, however, that state corporation law should not be disregarded simply because an action is based upon a federal statute. *Nat'l Serv. Indus.,* 352 F.3d at 685 (quoting *Bestfoods*, 524 U.S. at 63). Consequently, the *National Service Industries* opinion overturned the *Betkoski* opinion, ***because the substantial continuity doctrine is not part of the general federal common law***. 352 F.3d at 687.

Even though there is no Fifth Circuit precedent directly on point, there is Fifth Circuit case law addressing the general subject of whether state or federal common law governs liability issues in the context of FIRREA. *Fed. Deposit Ins. Corp. v. McFarland*, 243 F.3d 876 (5th Cir. 2001). In the *McFarland* case, an assignee of the FDIC argued that either FIRREA preempted the application of Louisiana law on mortgage reinscription, or federal common law governed. 243 F.3d at 883. The Fifth Circuit held to the contrary: "Louisiana reinscription law operates to strip the FDIC of priority lien status." *Id*. at 893. Given the language and holdings of the *McFarland* and *O'Melveny &*

7

*Myers* opinions in the context of FIRREA, the Government's substantial continuity arguments must be rejected.

Further, for the reasons articulated in *National Service Industries*, the substantial continuity doctrine is not applicable in this lawsuit. Generally, the federal common law does not include the substantial continuity doctrine. There is no statutory provision stating, as in the labor context, that a special rule should be applied for successor liability. Texas law, therefore, governs. Under Texas law, the Complaint fails to state a valid claim for successor liability. Allied Corporation is not liable as the successor to Allied Capital, as is fully explained in Allied Corporation's Memorandum in Support of its Motion to Dismiss (the "Memo"). ECF #57 at 10-14.

## II. The Government Is Collaterally Estopped on the Successor Liability Issue

As is also explained in the Memo, Judge Harmon fully addressed this issue in granting a Preliminary Injunction in favor of Allied Corporation. *Id*. at 6-10. Attempting to evade Judge Harmon's decision, the Government argues that: (1) it did not have an opportunity to address the issue of successor liability before Judge Harmon; and (2) it did not have an opportunity to seek review of the decision. Opp. at 72-79. These arguments are ineffective and incredulous for at least seven reasons.

First, the argument necessarily relies on an unstated, but absurd proposition — the Government was not prepared to support its substantial continuity theory when it filed this lawsuit on November 1, 2011. That surely cannot be the case. If it were, it means that the Government was not prepared to certify on November 1 that its legal contentions were warranted by existing law, within the meaning of Rule 11(b)(2).

8

Second, the argument necessarily relies on another unstated but equally absurd proposition — the Government could not have reasonably expected Allied Corporation to oppose the substantial continuity theory. If the Government did not expect Allied Corporation to oppose this theory, what was the Government expecting? Since the suspension of Allied Corporation relied on the substantial continuity theory, the only defense that Allied Corporation could raise was that it was not liable as Allied Capital's successor.

Third, the Government had actual and ample notice that Allied Corporation would defend against successor liability. *See, e.g.*, Complaint for Declaratory and Injunctive Relief, ECF #1 ¶¶ 15, 28.A., 34.B., and 41.B. (*Allied Corporation v. Donovan,* No. 4:11-cv-03864, filed November 2, 2011); Memorandum in Support of Motion for Temporary Restraining Order, ECF #2 at 4-5, 8, and 13 (same). Both of these documents were served on the Government on November 3, 2011, which was five days before the Preliminary Injunction hearing that Judge Harmon conducted. ECF #34, *Allied Corporation v. Donovan,* No. 4:11-cv-03864 (November 8, 2011).

Fourth, the Memorandum in Support of Motion for Preliminary Injunction, ECF #15 at 2, 4-5, 15-17, and 21, addressed this issue. *Allied Corporation v. Donovan,* No. 4:11-cv-03864 (November 7, 2011). This document was served on the Government on November 7, 2011. Consequently, the Government clearly knew that Allied Corporation would defend against the successor liability theory.

Fifth, during the hearing, the testimony and argument focused on the successor liability issue.[7] ECF #40 at 9, 11-12, 189-90, 198, and 207 (Injunction Hearing Transcript) *Allied Corporation v. Donovan,* No. 4:11-cv-03864.  If the Government thought that additional briefing on this issue was warranted, it should have sought leave to provide such briefing ***before*** Judge Harmon issued the Preliminary Injunction in favor of Allied Corporation.  The Government never sought such relief because it was obviously satisfied with the case it had presented.

Sixth, after Judge Harmon issued the Preliminary Injunction, the Government made the tactical decision to seek reconsideration, rather than appeal.  That tactical decision, however, does not change the basic facts.  The Government had an immediate right to an appeal, and chose not to take that opportunity.

Seventh, mootness should not be a factor.  The only reason mootness arose is because of actions that the Government took unilaterally to undermine the case that Allied Corporation had filed.  HUD decided arbitrarily to withdraw the wrongful suspension of Allied Corporation in an attempt to get the declaratory judgment action

---

[7] The testimony of Mr. Hodge at the Injunction hearing focused on the lack of continuity between the business operation of Allied Capital and Allied Corporation.  Among other things, he described the primary differences between Allied Capital and Allied Corporation.  ECF #40 at 49:14-54:1 (Injunction Hearing Transcript).  Allied Capital had always been a broker of loans to other mortgage lenders, and not a mortgage lender itself. *Id*. at 49:18-54:1.  Allied Corporation, by contrast, has always been a mortgage lender. *Id*.  What this means, fundamentally, is that Allied Capital did not underwrite or fund the loans where it was a broker for any lender. *Id*. at 49:18-52:9; 204:6.  Allied Corporation, by contrast, underwrote and funded the loans it purchased. *Id.* at 52:10-13.  The Government had no evidence to rebut this testimony at the hearing, and offers nothing to the contrary after two amendments to the Complaint.

10

dismissed. ECF #56 at 1, 4, 7-8, *Allied Corporation v. Donovan,* No. 4:11-cv-03864. This tactic, just like the tactic of foregoing an appeal, is a decision that the Government took to enhance its litigation position. The Government should not now be able to have it both ways, after the decision does not look so advantageous in hindsight.

In other words, the Government should have been prepared to support its substantial continuity theory from the inception of the case. Its failure to do so is just that — a failure. Judge Harmon carefully and fully considered whether Allied Corporation should be responsible as a successor to Allied Capital. She held that Allied Corporation should not be responsible, and the Government is now collaterally estopped on this issue.

### III.   The Business Operations Were Substantially Different

Even if the Court accepts the argument that federal common law governs, the Complaint does not assert facts showing that the requirements of the substantial continuity theory have been satisfied. According to the Opposition, the substantial continuity theory results in successor liability for two distinct corporations when two conditions are met: (1) the successor corporation has knowledge of the claims; and (2) there is substantial continuity of the business operations of the company being succeeded. Opp. at 70.

In attempting to shoehorn the Complaint's assertions into these two conditions, the Opposition ends up conflating the two conditions into one, essentially arguing that similar employees and common administrative functions show substantially similar operations. Opp. at 71. Blithely dismissing this issue, the Opposition concludes with the self-serving generalization that "numerous [unidentified] witnesses have confirmed that

aside from changing the signage, there was no change in the operation of the Allied Capital branches that Allied Corporation absorbed." *Id.*

This cavalier argument is nothing short of disingenuous. First, the Complaint does not identify the persons who supposedly made these so-called confirmations. More importantly, whether the business in question has been substantially continued requires an analysis of what the surviving or continued business actually did, which neither the Complaint nor Opposition actually addresses.

Here, the Complaint actually admits that the businesses of Allied Capital and Allied Corporation were substantially different, and no other facts are needed. According to the Complaint, Allied Capital was a loan correspondent. Compl. ¶¶ 5, 17. Allied Corporation, however, was a sponsoring mortgagee. Compl. ¶¶ 18. Under HUD regulations and guidelines, there are substantial differences between these kinds of businesses. *See, e.g.,* 24 C.F.R. § 202.8(a).

As a loan correspondent, Allied Capital acted as a mortgage broker, whereas Allied Corporation was a lender. Compl. ¶¶ 5, 17, 18. In practical terms, Allied Capital took a loan application, acquired credit documentation (such as credit reports, tax forms, and verifications of employment, assets, and prior rental or mortgage payments), and forwarded these to a sponsoring lender, such as Chase Mortgage or Bank of America.

In contrast, the sponsoring lenders, such as Chase Mortgage, would evaluate (underwrite) the credit worthiness of the putative borrower. *See* Compl. ¶¶ 18, 27; 24 C.F.R. § 202.8(a)(i). The sponsoring lender would decide whether the borrower's characteristics satisfied HUD's requirements for FHA insurance. The sponsoring lender

would actually supply the funds for the loan, usually drawing upon its "warehouse" lines of credit. Perhaps most importantly, the sponsoring lender – not the loan correspondent – would arrange for the endorsement of FHA insurance on the loan. *See* Compl. ¶¶ 18, 27.

Given this HUD-mandated framework, it would be somewhat surprising if employees in Allied Capital's branches noticed much of a change, when ownership of the branches changed from Allied Capital to Allied Corporation. *Cf.*, Opp. at 71. The fundamental business operations, however, changed considerably. After the ownership of the branches changed, the loans were not only originated, but they were also underwritten, funded, and endorsed with FHA insurance in one consolidated operation. Consequently, the Complaint fails to allege, and the Opposition fails to show, that the second prong of the Government's successor liability theory is satisfied. There was no substantial continuation of Allied Capital's business, and Allied Corporation cannot be held responsible for Allied Capital under the Government's successor liability theory.

## IV. No Facts Show That Allied Corporation Is Liable

In a futile attempt to keep Allied Corporation improperly in this lawsuit, the Opposition points to only 5 of the Complaint's more than 145 paragraphs. Opp. at 68 (Compl. ¶¶ 7, 55, 76 – 78).[8] None of these paragraphs, however, state valid claims against Allied Corporation under the FCA or FIRREA. None of these paragraphs have anything to do with the Government's so-called shadow branches. *Cf.,* Opp. at 13-17.

---

[8] To the extent that any claim in the Complaint against Allied Corporation is not addressed in this Reply, the applicable portion of the Reply filed contemporaneously herewith by Allied Capital is incorporated by reference, as if fully restated herein.

13

None of these paragraphs describe a single statement or report to HUD or the FHA, which Allied Corporation made that is false. Not one loan is described. Not one branch certification by Allied Corporation is described. Not one application for the endorsement of FHA insurance by Allied Corporation is described. Not one annual certification by Allied Corporation, and not one quality control report is described. *Cf.,* Opp. at 45–49. Consequently, the Complaint does not, and cannot, state a viable claim under the FCA or FIRREA against Allied Corporation. Therefore, Allied Corporation should be dismissed from this lawsuit with prejudice.

## **CONCLUSION**

The Complaint has not, and cannot, state a viable claim for successor liability against Allied Capital, based on its conclusory assertions. The Complaint has not made any allegations of fact regarding Allied Corporation's activities. Indeed, the Complaint fails to comply with the requirement under the Federal Rules of Civil Procedure that the allegations state plausible claims for relief, or be pled with the requisite specificity for allegations sounding in fraud. This is true even though the Government has made three attempts to allegedly state claims upon which it is entitled to relief. For these reasons, the Complaint should be dismissed with prejudice as to Allied Corporation.

DATED: January 7, 2013  Respectfully submitted,

**Munsch Hardt Kopf & Harr, P.C.**

By: ___/s/Fred Wahrlich by permission BEA___
Fred Wahrlich
Texas Bar No. 20666500
SD No. 248
700 Louisiana Street, Suite 4600
Houston, Texas 77002-2732
Tel: (713) 222-1469
Fax: (713) 222-5869
fwahrlich@munsch.com
**ATTORNEYS-IN-CHARGE FOR DEFENDANT** *AllQuest Home Mortgage Corporation*

**Of Counsel**

Mitchel H. Kider
David M. Souders
Bruce E. Alexander
WEINER BRODSKY KIDER PC
1300 19th Street, NW, 5th Floor
Washington, D.C. 20036
Tel: (202) 628-2000
Fax: (202) 628-2011
kider@thewbkfirm.com
souders@thewbkfirm.com
alexander@ thewbkfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 7th day of January, 2013, a copy of the foregoing Reply Memorandum in Support of Motion to Dismiss was served upon all parties and counsel of record via the Court's CM/ECF system.

      /s/ Bruce E. Alexander
      Bruce E. Alexander