UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff-Intervenor,<br><br>     v.<br><br>ALLQUEST HOME MORTGAGE CORPORATION, f/k.a 8 HOME MORTGAGE CORPORATION, AMERICUS MORTGAGE CORPORATION, f/k/a ALLIED HOME MORTGAGE CAPITAL CORPORTATION, JIM C. HODGE, and JEANNEE L. STELL<br>               Defendants. | 12 Civ. 02676 (GCH)<br><br>**ECF** |

**Memorandum of Law in Opposition of LBM Financial
LLC's Motion for Leave to Intervene and File Creditor's
Complaint to Reach and Apply**

                                         KENNETH MAGIDSON
                                         United States Attorney for the
                                         Southern District of Texas
                                         *Attorney for the United States of America*
                                         86 Chambers Street – 3d Floor
                                         New York, NY  10007
                                         Telephone:  212. 637.2678
                                         Facsimile:  212. 637.2686
                                         E-mail:  jeannette.vargas@usdoj.gov

JEANNETTE A. VARGAS
JAMES NICHOLAS BOEVING
Special Assistant United States Attorneys

     – Of Counsel –

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING ............................................................. 1

STATEMENT OF THE ISSUES ........................................................................................ 1

SUMMARY OF THE ARGUMENT ................................................................................... 2

BACKGROUND .................................................................................................................. 3

    A.    The Allegations in the FCA and FIRREA Action .......................................... 3

    B.    Allegations in the Intervenor's Complaint to Reach and Apply ................... 4

ARGUMENT ........................................................................................................................ 5

POINT I.    THE MOTION TO INTERVENE SHOULD BE DENIED .......................... 5

CONCLUSION ................................................................................................................... 11

i

## TABLE OF AUTHORITIES

**Cases** **Page**

*Bear Ranch, LLC v. HeartBrand Beef, Inc.*,
 -- F.R.D. --, 2012 WL 5386924 (S.D. Tex. Nov. 1, 2012) ................. 6, 7, 10, 11

*Butte County, Cal. v. Hogen*,
 No. 08 Civ. 519 (HHK) (AK), 2008 WL 2410407
 (D.D.C. June 16, 2008) ....................................................................................... 7

*Deus v. Allstate Ins. Co.*,
 15 F.3d 506 (5th Cir. 1994) ........................................................................... 8, 10

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,
 229 F.R.D. 126 (S.D. Tex. 2005) ......................................................................... 6

*Harris v. Amoco Production Co.*,
 68 F.2d 669 (5th Cir. 1985) ................................................................................. 6

*Kneeland v. National Collegiate Athletic Association*,
 806 F.2d 1285 (5th Cir. 1987) ............................................................................. 9

*Kukui Gardens Corp. v. Holco Capital Group, Inc.*,
 3261 F.R.D. 523 (D. Hawaii 2009) ..................................................................... 9

*Newby v. Enron Corp.*,
 443 F.3d 416 (5th Cir. 2006) .............................................................................. 7

*Nipponkoa Insurance Co. v. Port Terminal Railroad Association*,
 Civil Action No. H–10–0284, 2011 WL 1103584
 (S.D. Tex. March 23, 2011) .............................................................................. 10

*United States ex rel. Wright v. Comstock Resources, Inc.*,
 456 F. App'x 347 (5th Cir. 2011) ........................................................................ 6

## Rules & Statutes

Fed. R. Civ. P. 24 ........................................................................................................ 6

Fed. R. Civ. P. 24(a) .................................................................................................... 6

Fed. R. Civ. P. 24(b) ............................................................................................................. 7

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................................... 1

12 U.S.C. § 1833a ................................................................................................................. 1

28 U.S.C. § 1367(a) .............................................................................................................. 7

31 U.S.C. § 3729 ................................................................................................................... 1

31 U.S.C. § 3730(b)(2) .......................................................................................................... 3

31 U.S.C. § 3730(b)(4) .......................................................................................................... 3

31 U.S.C. § 3730(c)(1) ..................................................................................................... 9, 10

31 U.S.C. § 3730(d) .............................................................................................................. 9

## NATURE AND STAGE OF THE PROCEEDING

This is a *qui tam* action originally brought by relator Peter Belli (the "Relator") on behalf of the United States of America under the False Claims Act ("FCA"), as amended, 31 U.S.C. §§ 3729 *et seq.,* arising from fraud perpetrated on the Federal Housing Administration of the United States Department of Housing and Urban Development ("HUD" or "HUD/FHA") in connection with the residential mortgage lending business of Americus Mortgage Corporation's, formerly known as Allied Home Mortgage Capital Corporation ("Allied Capital"). The United States of America (the "Government" or "Plaintiff") intervened in the action, and has filed its own complaint against the Defendants asserting claims under the FCA and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a. LBM Financial, LLC ("LBM"), a creditor of the Relator, has now moved for leave to file a complaint in intervention pursuant to Federal Rule of Civil Procedure 24(b) (the "Motion to Intervene").

## STATEMENT OF THE ISSUES

LBM's Motion to Intervene should be denied because (1) the district court lacks subject matter jurisdiction over the proposed intervenor complaint; (2) LBM's claims against the Relator do not share a common question of law or fact with the main action, as required by Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure, and (3) because denying LBM's motion would be a proper exercise of the district court's discretion.

## SUMMARY OF THE ARGUMENT

Both the Government's Second Amended Complaint and the Relator's original complaint contain similar and overlapping allegations. Specifically, at issue in this litigation is whether (1) Defendants engaged in a fraudulent scheme to induce HUD to insure thousands of loans by falsely representing to HUD that the loans originated from legitimate, HUD-approved branch offices, when in actuality the loans originated from Allied Capital's network of unauthorized "shadow" branch offices; (2) Defendants lied to HUD to conceal Allied Capital's anemic quality control program; (3) Allied Capital, through certifications executed by Defendant Jeanne Stell, lied to HUD about its accumulating sanctions from state authorities and the felony convictions of its employees in order to conceal from HUD its flagrant violations of governing HUD regulations; and (4) Allied Capital, and later its successor, Allied Corporation, each knowingly submitted false statements of fact to HUD concerning Allied's branch operations.

The allegations in the LBM Complaint have nothing whatsoever to do with Allied's alleged false representations to the Government. Indeed, the LBM Complaint has nothing whatsoever to do with Allied at all. Rather, it concerns an entirely disparate and private dispute between LBM and the Relator's estate as to whether Relator is liable to LBM for a guaranty on a defaulted loan.

Because the LBM Complaint does not share common law or facts with the Government's complaint, the motion to intervene should be denied.

## BACKGROUND

**A.   The Allegations in the FCA and FIRREA Action**

Pursuant to the National Housing Act of 1934, HUD, through the FHA, offers various mortgage insurance programs.  *See* Second Amended Complaint ("Compl."), dated Nov. 12, 2012, ¶ 26.  Through these programs, FHA insures approved lenders against losses on mortgage loans made to buyers of single-family housing.  *Id.*  Allied Capital was, until recently, an approved FHA loan correspondent, and as such, had the authority to originate HUD-insured mortgage loans for sale or transfer to other qualifying mortgagees.  *Id.* ¶ 5.

In or about May 13, 2011, the late Peter Belli, formerly employed by Allied Capital as a branch manager, initiated a *qui tam* suit against Allied Capital pursuant to the FCA (the "*Qui Tam* Complaint").  [Dkt. No. 9].  The *Qui Tam* Complaint alleged, *inter alia*, that Allied Capital had falsely certified compliance with relevant HUD regulations regarding the payment of branch operating expenses.  *Id.*

On November 1, 2011, the Government filed its Notice of Election to Intervene, pursuant to 31 U.S.C. § 3730(b)(2) and (4).  The Government subsequently filed a Complaint-in-Intervention against Defendants Allied Capital, Allied Home Mortgage Corporation, Jim C. Hodge, and Jeanne L. Stell on November 4, 2011.  [Dkt. No. 6]. The Government later amended its complaint.  The Government's Second Amended Complaint alleges that, while Allied Capital made substantial profits through its origination and sale of FHA-insured mortgages, it willfully violated the requirements that provide protection to HUD's insurance fund and knowingly deceived HUD in order to

3

perpetuate its fraudulent schemes. *Id.* ¶ 6. Specifically, at issue in the Government's Complaint is whether: (1) Defendants engaged in a fraudulent scheme to induce HUD to insure thousands of loans by falsely representing to HUD that the loans originated from legitimate, HUD-approved branch offices, when in actuality the loans originated from Allied Capital's network of unauthorized "shadow" branch offices; (2) Defendants lied to HUD to conceal Allied Capital's anemic and virtually nonexistent quality control program; (3) Allied Capital, through certifications executed by Defendant Jeanne Stell, lied to HUD about its accumulating sanctions from state authorities and the felony convictions of its employees in order to conceal from HUD its flagrant violations of governing HUD regulations; and (4) Allied Capital, and later its successor Allied Corporation, both knowingly submitted false statements of fact to HUD concerning Allied's branch operations. *Id.* ¶¶ 6-10.

**B.    The Allegations in the Intervenor's Complaint to Reach and Apply**

On December 10, 2012, LBM filed a motion seeking leave to intervene as a plaintiff in this action. [Dkt. No. 64]. Attached to the motion was LBM's proposed Complaint to Reach and Apply (the "LBM Complaint"). [Dkt. No. 64, Ex. 1].

According to the LBM Complaint, the Relator died on February 20, 2012. LBM Compl. ¶ 2. His estate is currently being probated in the Worcester Probate Court in Massachusetts. *Id.* ¶ 3. LBM alleges that it is a creditor of the Relator's estate in the amount of $8,323,866.60, as a result of Relator's guarantee of two defaulted loans. *Id.* ¶¶ 4-6. LBM has submitted a claim against the Belli estate in the Westchester Probate Court. *Id.* ¶ 3.

The LBM Complaint seeks a judgment awarding it compensatory damages against the Relator as a result of the default of the loans, and an order attaching any proceeds that are awarded to the Relator in this *qui tam* action to satisfy such judgment. *Id.*

## ARGUMENT
## THE MOTION TO INTERVENE SHOULD BE DENIED

The Motion to Intervene should be denied because the district court lacks subject matter jurisdiction over the LBM Complaint. The Motion to Intervene should be denied for the additional reason that LBM has failed to meet the legal prerequisite of demonstrating that the LBM Complaint shares a common legal or factual question with the main action. Finally, even if LBM had met the threshold requirements for permissive intervention, the Motion to Intervene should be denied in the exercise of the Court's discretion.

Notably, the Motion for Leave to Intervene does not reference Rule 24, which sets forth the mandatory requirements that must be met before a district court permits a non-party to intervene in an action. That Rule provides, in pertinent part:

(b) Permissive Intervention

  (1) In General. On timely motion, the court may permit anyone to intervene who:

   (A) is given a conditional right to intervene by a federal statute; or

   (B) has a claim or defense that shares with the main action a common question of law or fact.
 . . .
  (2) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention

5

and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

Fed. R. Civ. P. 24.[1]

Accordingly, in this Circuit, where the movant does not claim to have been granted a conditional right to intervene by statute, permissive intervention is appropriate only when the intervenor demonstrates that it has: "(1) an independent ground for subject matter jurisdiction, (2) a timely motion, and (3) a claim or defense that has a question of law or fact in common with the main action." *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, 229 F.R.D. 126, 130 (S.D. Tex. 2005); *see also Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) ("It is well-established . . . that a party must have independent jurisdictional grounds to intervene permissively under Rule 24(b).").

As an initial matter, LBM has not established that this court possesses subject matter jurisdiction over the LBM Complaint. In the rare situation where, as here, a movant seeks to intervene as a plaintiff in a federal-question case, but asserts a claim that does not itself raise a federal question, such movant must establish another basis for the federal court to exercise jurisdiction over the intervenor complaint. *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, -- F.R.D. --, 2012 WL 5386924, at *5 (S.D. Tex. Nov. 1, 2012). No such basis for the exercise of federal court jurisdiction appears on the face of the LBM Complaint, however. Because LBM acknowledges that it is a Massachusetts

---

[1] Rule 24(a) describes when intervention must be permitted as of right. Fed. R. Civ. P. 24(a). LBM does not and cannot credibly assert that it is permitted to intervene by right. Indeed, "the FCA does not allow anyone other than the Government to intervene in *qui tam* actions." *U.S. ex rel. Wright ex rel. Wright v. Comstock Resources, Inc.*, 456 F. App'x 347, 350 (5th Cir. 2011). Thus, whether to permit intervention is governed by Rule 24(b).

limited liability company, LBM Compl. ¶ 1, and that the relator was a resident of Massachusetts, *id.* ¶ 2, there is no grounds for the exercise of diversity jurisdiction, *see Bear Ranch*, 2012 WL 5386924, at *5. Nor can the district court exercise supplemental jurisdiction over the LBM Complaint. To establish supplemental jurisdiction over the LBM Complaint under 28 U.S.C. § 1367(a), LBM's claims must "derive from a common nucleus of operative fact," that are "so interrelated that plaintiffs 'would ordinarily be expected to try them all in one judicial proceeding.'" *Id.* (citations omitted). Yet as explained further below, not only do the LBM Complaint and the Government's Second Amended Complaint not derive from the same incident, transactions, contract, or events such that it would render them interrelated within the meaning of section 1367(a), there is not even a single common factual question raised by the LBM Complaint and the Government's Second Amended Complaint.

    The Motion to Intervene is also defective for the additional reason that LBM cannot meet the commonality requirement of Rule 24(b). The commonality requirement is satisfied when "the facts necessary to assert [the intervenor's] claim are essentially the same facts as those necessary to establish [an existing party's] claim." *Butte County, Cal. v. Hogen*, No. 08 Civ. 519 (HHK) (AK), 2008 WL 2410407, at *2 (D.D.C. June 16, 2008) (citation omitted) (alterations in original). The determination of whether the applicant's claim or defense and the main action share a common question of law or fact "is not discretionary; it is a matter of law." *Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006).

"The intervention rule is intended to prevent multiple lawsuits where common questions of law or fact are involved but is not intended to allow the creation of whole new lawsuits by the intervenors." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994). Yet an entirely new lawsuit is exactly what LBM seeks to import into the current action. LBM is singularly unable to point to any factual or legal issue that its breach of contract action against the Relator shares with the main action in this case. The operative complaint in this action is the Second Amended Complaint by the United States against the Allied Defendants, which asserts claims under the FCA and FIRREA based upon fraudulent representations made to HUD in connection with Allied Capital's FHA loan origination business. The LBM Complaint is premised upon the Relator's purported breach of two loan guaranty agreements, an action which will presumably be governed by Massachusetts state law. *See* LBM Compl., Ex. A, at ¶ 10 (guaranty agreement provides that Massachusetts law governs its construction). From the face of the documents, these loan guaranty agreements appear to have nothing to do with the Allied Defendants, their loan origination business, or any representations made by the Allied Defendants to HUD. *See* LBM Complaint, Ex. A. The only parties to those loan agreements were LBM, the Relator as the Guarantor, and the Borrowers under the two loan agreements, the Bell-Ches Realty Trust and North Central Processors, Inc. *See id.*

Indeed, even the parties to the proposed LBM Complaint are different than the parties to the main action. The parties to the LBM Complaint would be LBM and the estate of the Relator. The instant action, in contrast, is between the United States and the Allied Defendants, as the Government has taken over the prosecution of this case. Upon

8

the Government's intervention in this *qui tam* action, the United States by statute assumed primary responsibility for the prosecution of the action, and is the real plaintiff-in-interest in this case. 31 U.S.C. § 3730(c)(1). The Relator's only remaining interest is a claim to a share of any recovery attributable to the Relator's FCA claims that is secured by the United States. *Id.* § 3730(d).

LBM's purported claim to that money is insufficient to establish that the LBM Complaint raises common issues of fact or law. *See, e.g.*, *Kukui Gardens Corp. v. Holco Capital Group, Inc.*, 261 F.R.D. 523, 534 (D. Hawaii 2009) (holding that assignee to mortgage agreement could not succeed in motion for permissive intervention, where assignee asserted right to funds held in escrow by the parties to the main litigation, but assignee's specific claims against the defendant were unrelated factually and legally to the plaintiff's claims against the defendant). Under LBM's theory, any creditor of a plaintiff in a federal lawsuit can file a motion to intervene in such lawsuit and seek to attach the judgment rendered, no matter how far attenuated that creditor's claims are from the allegations in the main action. Rule 24(b) does not sweep so broadly.

Once the threshold requirements of Rule 24(b) have been met, the question of whether to grant a motion for intervention rests entirely within the discretion of the district court. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). In the instant case, even if LBM had established common issues of law and fact sufficient to bring them within the ambit of Rule 24(b), the Motion to Intervene should nonetheless be denied in the exercise of the court's discretion.

First, the court should decline to permit the contemplated intervention because the LBM Complaint represents a blatant attempt to conduct an end run around the jurisdiction of the Westchester Probate Court. LBM has already submitted a claim to the Westchester Probate Court, and should seek to vindicate its rights to any distribution from the Relator's estate in that forum. "Intervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means." *Deus*, 15 F.3d at 526 (holding that it would be abuse of discretion to grant motion to intervene where movant was already participating in a separate lawsuit against the defendant and could protect his interests in that separate proceeding). The LBM Complaint is particularly problematic, because it seeks to attach assets of the Relator's estate before such assets can be distributed as part of the Relator's probate proceeding, thereby potentially depriving creditors with priority over LBM from recovering.

Second, it would be disruptive to FCA and FIRREA litigation generally if creditors of relators were permitted to intervene in *qui tam* suits simply to prosecute unrelated claims against Relators. Indeed, the Government, not the Relator, has "primary responsibility for prosecuting the action." 31 U.S.C. § 3730(c)(1).

Finally, the Motion to Intervene should be denied because it would "not produce the efficiency gains that justify intervention." *Bear Ranch*, 2012 WL 5386924, at *6. In exercising discretion under Rule 24(b), courts consider whether the intervenor will contribute signficantly to the development of the underlying factual issues or whether intervention would further complicate the case without providing any added benefits of efficiency. *See Nipponkoa Ins. Co. v. Port Terminal R.R. Ass'n*, Civil Action No. H–10–

0284, 2011 WL 1103584, at *2 (S.D. Tex. March 23, 2011).  LBM cannot aid in the development of the record in the main action,  and allowing it to interpose the LBM Complaint would only serve to prolong the resolution of this matter by requiring this court to consider wholly unrelated issues of Massachusetts state contract law.  *Bear Ranch*, 2012 WL 5386924, at *6 (noting that court would deny motion to intervene in exercise of its discretion, where claims of intervenor would only ripen at completion of litigation and only if plaintiff prevailed, thereby resulting in the prelonging of the litigation by raising new and distinct issues of contractual interpretation).

## CONCLUSION

For the foregoing reasons, LBM's Motion to Intervene should be denied.

Respectfully Submitted,

KENNETH MAGIDSON
UNITED STATES ATTORNEY

 *s/* Jeannette Vargas
Jeannette A. Vargas
James Nicholas Boeving
Special Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2678/2748
Fax: (212) 637-2686
Email: jeannette.vargas@usdoj.gov
Email: james.n.boeving@usdoj.gov