UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:12-cv-02676 |
| | § | |
| AMERICUS MORTGAGE | § | |
| CORPORATION, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the Court is Allquest Home Mortgage Corporation's Motion to Dismiss [Dkt. 56].[1]  The United States of America has sued two residential mortgage lending companies and executive officers of those companies, alleging civil fraud in violation of the False Claims Act ("FCA") 31 U.S.C. § 3729 and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a.   The Government alleges that Defendants Americus Mortgage Corporation ("Allied Capital"), Allquest Home Mortgage Corporation ("Allied Corp"),[2] Jim C. Hodge, and Jeanne L. Stell made numerous false statements in loan applications and other documents to procure home mortgage insurance on loans from the United States Department of Housing and Urban Development ("HUD"). The Government asserts that

---

[1] Each of the Defendants has filed a motion to dismiss the Government's Complaint.  The Court has analyzed these in separate opinions, but adopts each of the opinions into the other because many of the facts and arguments overlap.

[2] Defendant Americus Mortgage Corporation was formerly known and is identified in the Second Amended Complaint by its former name, Allied Home Mortgage Capital Corporation. Defendant Allquest Home Mortgage Corporation is identified in the Second Amended Complaint by its former name, Allied Home Mortgage Corporation.

this alleged fraud resulted in HUD paying over $150 million in insurance proceeds to Defendants for loans that defaulted.

The case has been transferred to this Court by consent of the parties pursuant to 28 U.S.C. § 636(c).  After considering the pleadings, the arguments of the parties, and applicable legal authorities, the Court finds that the Motion to Dismiss is **GRANTED**. The Government is **GRANTED** 14 days to amend its Complaint.

## I.  BACKGROUND

Allied Capital was an approved FHA loan correspondent from September 26, 1991 to December 31, 2010.  It had the authority to originate HUD-insured mortgage loans for sale or transfer to other qualifying mortgages.  On January 23, 2012, Allied Capital changed its name with the Secretary of State of Texas to "Americus Mortgage Corporation."  Allied Corp is the successor to Allied Capital.[3]  The tie between the two entities is the Asset Purchase Agreement of May 1, 2010 between Allied Capital and Allied Corp.  The Government contends that the two entities share the same ownership structure, the same headquarters, nearly all the same senior managers, the same quality control employees, and perpetrated the same harm to the public through their fraudulent schemes.

In 2010 and 2011, Allied Capital sold its assets to Allied Corporation and terminated nearly all of its branches, then reopening them as branches of Allied Corp.

---

[3] Defendant Jim Hodge is the President and Chief Executive Officer of both Allied Capital and Allied Corp.  Defendant Jeanne Stell is the Executive Vice President and Director of Compliance for both companies, and she has served as the Director of Compliance for both since 2001.

On January 10, 2012, Allied Corp changed its name with the Secretary of State of Texas to "Allquest Home Mortgage Corporation."[4]

The Government alleges that Allied Capital and Allied Corp (as the successor) willfully violated HUD requirements protecting HUD's insurance fund and knowingly deceived HUD.[5]   The Government contends that Allied Capital made fraudulent representations to HUD/FHA in four separate types of document: (1) loan application packages to secure approval for FHA insurance; (2) Branch Certifications to obtain approval to originate FHA loans from a new branch office; (3) Annual Certifications for continued participation in the FHA program; and (4) quality control reports.

In Claims I and II of the Second Amended Complaint, the Government asserts causes of action against Defendants Allied Capital, Allied Corp and Hodge under former Section 3729(a)(2) and Section 3729(a)(1)(B) (as amended) of the FCA.  The FCA is the Government's "primary litigation tool" for recovering losses resulting from fraud. *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 388 (5th Cir. 2008).

In Claims III-VI, the Government asserts causes of action under Section 1006 and Section 1014 of FIRREA.[6]   Section 1006 makes it a crime for any person who is "connected in any capacity with [HUD]" to "mak[e] any false entry in any book, report or statement of or to [HUD]" with the "intent to . . . deceive any officer, auditor, examiner

---

[4] To avoid confusion, Allied Corp will be used throughout the opinion.
[5] *Id.* at ¶ 6.
[6] Section 951(a) of FIRREA provides that "[w]hoever violates any provision of law to which this section is made applicable by subsection (c) of this section shall be subject to a civil penalty in an amount assessed by the court in a civil action under this section." 12 U.S.C. § 1833a(a). Section 951(c) of FIRREA identifies the criminal violations to which FIRREA civil penalties apply, including Sections 1006 and 1014. *Id.* §1833a(c).

or agent . . of [a] department or agency of the United States. . ."  18 U.S.C. § 1006.

Section 1014 prohibits the submission of false records or making of false statements to

the FHA.   18 U.S.C. § 1014.   Specifically, it makes it a crime for any person to

"knowingly mak[e] any false statement or report, or willfully overvalues any land,

property or security, for the purpose of influencing in any way the action of the [FHA]."

*Id.*

## II.     Dismissal Under Rule 12(b)(6) and Rule 9(b)

### A. *The Rule 12(b)(6) Standard*

The Government's live Complaint is the Second Amended Complaint. [Dkt. 48].

Defendant Allquest has moved to dismiss the Complaint for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6).   Rule 12(b)(6) allows dismissal if a plaintiff

fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   A

motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted."

*United States ex rel. Tucker v. Christus Health*, No. 09-11819, 2012 U.S. Dist. LEXIS

151906, 8-9 (S.D. Tex. Oct. 23, 2012) (Atlas, J.) (*qui tam* case citing *Harrington v. State*

*Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

The Supreme Court has confirmed that Rule 12(b)(6) must be read in conjunction

with Rule 8(a), which requires "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly,* 550

U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129

S. Ct. 1937, 173 L. Ed. 2d 868 (2009).   To withstand a Rule 12(b)(6) motion, a complaint

must contain "enough facts to state a claim to relief that is plausible on its face"—legal

conclusions alone are insufficient. *Twombly,* 550 U.S. at 570. The "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *United States ex rel. King v. Univ. of Texas Health Science Center-Houston*, 907 F. Supp. 2d 846, 849 (S.D. Tex. 2012) (Rosenthal, J.) (*qui tam* case quoting *Iqbal,* 556 U.S. at 678). The complaint must be liberally construed in favor of the plaintiff, and when there are well-pleaded factual allegations, courts should presume they are true, even if doubtful—only then may the court determine whether they "plausibly give rise to entitlement to relief." *United States ex rel. Tucker*, 2012 U.S. Dist. LEXIS 151906 at 8-9.

### B. The Rule 9(b) Standard

Complaints filed under the False Claims Act must also meet the heightened pleading standard of Federal Rule of Civil Procedure Rule 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 185 (5th Cir. Tex. 2009) (citing Fed. R. Civ. P. 9(b)). Rule 9(b) requires "that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010). "Because the linchpin of an FCA claim is a false claim, the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b)." *United States ex rel. Rafizadeh v. Continental*

*Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008) (internal quotations and citation omitted).

For FCA claims, Rule 9(b) must be applied in a "context-specific and flexible" manner. *United States ex rel. Grubbs*, 565 F.3d at 190. "It is adequate to allege that a false claim was knowingly presented regardless of its exact amount; the contents of the bill are less significant because a complaint need not allege that the Government relied on or was damaged by the false claim." *Id.* at 189. The complaint may "survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190.

## III.    Defendant Allquest Home Mortgage Corporation's Motion to Dismiss

The Government contends that Defendant Allied Corp is liable as the "successor entity to, and a mere continuation of Allied Capital."[7]   Allied Corp argues that the Government is collaterally estopped from trying to hold it liable for the acts and omissions of Allied Capital.[8] In the alternative, Allied Corp argues that Texas law regarding successor liability should apply, and it should bear no liability in this case.

### A.  Collateral Estoppel Does Not Apply

Allied Corp contends the Government is collaterally estopped from arguing it is liable under the theory of successor liability.  In *Allied Home Mortg. Crop. v. Donovan*, United States District Judge Melinda Harmon granted a preliminary injunction against HUD, preventing it from suspending Allied Corp's approval to originate and underwrite

---

[7] Dkt. 69.
[8] Dkt. 56.

FHA-insured mortgage loans.  830 F. Supp. 2d. 223, 232-33 (S.D. Tex. 2011).  Judge Harmon found that HUD "erred in acting contrary to the law in Texas as that law applies to [Allied] Corp's acquisition of some of the assets of [Allied] Capital and on the theory that [Allied] Corp is a mere continuation of [Allied] Capital." *Id.* at 232.  Allied Corp claims that Judge Harmon's ruling now bars the government from relitigating the issue of whether successor liability applies here.  The Government argues that collateral estoppel does not apply in this context, and the Court agrees with the Government's position.

A court has discretion in choosing whether to apply collateral estoppel and should do so only if fair.  *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 831 (5th Cir. 2006).  To determine whether collateral estoppel applies, courts consider whether "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is [any] special circumstance that would make it unfair to apply the doctrine." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998) .  The Fifth Circuit has also set out additional "safeguards that must be present before estoppel may be employed." *Baros v. Tex. Mex. Ry.*, 400 F.3d 228, 233 (5th Cir. 2005).  Relevant to this inquiry is the "requirement that the facts and the legal standard used to assess them are the same in both proceedings." *Id.* (internal quotations omitted).[9]

---

[9] Other safeguards include whether "a new determination of the issue is warranted by differences in the quality of extensiveness of the procedures followed in the two courts," and  the availability of judicial review of the first proceeding as being "of paramount importance to the issue of preclusion." *Id.*

7

Here, Judge Harmon's decision was made in the context of a preliminary injunction—*i.e.,* the inquiry was whether there was a substantial likelihood of success on the merits, and a substantial threat of irreparable injury. *Allied Home Mortg. Corp. v. Donovan,* 830 F. Supp. 2d. at 223. Thus, Judge Harmon's ruling was not assessed under the same legal standard as would be applicable otherwise. *Baros v. Tex. Mex. Ry.,* 400 F.3d 228, 232 (5th Cir. 2005) (landowners contend that because the "precise issue" was decided in the temporary injunction proceeding, that finding is entitled to preclusive effect; the court held "plea for collateral estoppel is unavailing.") Similarly, an issue decided in a preliminary hearing cannot be said to have been "fully and vigorously litigated in the prior action." *Id.* As such, and contrary to Allied Corp's argument, issues litigated in a preliminary injunction action do not form a basis for collateral estoppel. *See e.g., id; Neill Corp. v. John Paul Mitchell Sys.,* 1995 U.S. Dist. LEXIS 9199, 25-26 (D. La. 1995).

### B. Texas law does not recognize successor liability

Allied Corp argues in the alternative that Texas law applies in this case, and under Texas law, it is not liable as a continuation of Allied Capital. The Government argues that federal common law—which does recognize successor liability—controls whether Allied Corp is the legal successor to Allied Capital.

The Court finds that Texas law controls in this case because Allied Capital and Allied Corp are both Texas corporations. *See Allied Home Mortg. Corp. v. Donovan,* 830 F. Supp. 2d. at 223. Under Texas law, the "buying and selling corporations' purchase

agreement's choice of law provision controls the applicability of successor liability doctrines." *Escalon v. World Grp. Secs. Inc.*, No. 5:07-CV-214, 2008 U.S. Dist. LEXIS 107196, at *32 (N.D. Tex. Nov. 14, 2008).  Here, the Asset Purchase Agreement designates Texas in its choice of law clause:

> **Governing Law:** This Agreement shall be construed in accordance with applicable Federal Law and the laws of the State of Texas without reference to laws regarding choice of law or forum.  The exclusive venue of any action arising from this Agreement shall be Harris County, Texas and each party waives any objection to venue laid therein.[10]

Accordingly, the Court will apply Texas law.

Texas law does not generally recognize successor liability for subsequent purchases of corporate assets. *Norfolk Southern Ry. Co. v. Trinity Industries, Inc.*, No. 3-07-CV-1905-O, 2008 U.S. Dist. LEXIS 110274, *4 (N.D. Tex. 2009) (applying Texas law).  In fact, Texas "strongly embraces a non-liability rule for corporate successors." *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 139 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).  Texas law authorizes a successor to acquire the assets of a corporation without incurring any of the grantor corporation's liabilities unless the successor expressly assumes those liabilities. *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 780-81 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also McKee v. Am. Transfer and Storage*, 946 F. Supp. 485, 487 (N.D. Tex. 1996) ("The Texas Business & Corporations Act eliminates the doctrine of implied successor liability.").  Thus, in Texas, there is no successor in interest when an acquiring corporation does not expressly agree to assume the liabilities of the other party to an agreement because "successor" has

---

[10] *Allied Home Mortg. Corp. v. Donovan,* 830 F. Supp. 2d. at 223.

a specialized meaning "beyond simple acquisition." *Sitaram v. Aetna U.S. Healthcare of N. Tex.*, Inc., 152 S.W.3d 817, 828 (Tex. App.—Texarkana 2004, no pet.). The only two circumstances in which a successor business that acquires the assets of another business also acquires its liabilities or debts are (1) the successor expressly agrees to assume liability or (2) the acquisition results from a fraudulent conveyance to escape liability for the debts or liabilities of the predecessor. *Lockheed Martin Corp.* 16 S.W.3d at 134-35 & n.6.

In this case, Allied Corp did not agree to assume the liability of Allied Capital. Paragraph 2.02 of the Agreement, titled Excluded Assets, expressly lists "any and all liabilities" as a recognized exclusion. Further, paragraph 2.03, titled No Liabilities Acquired, provides in pertinent part:

> Unless expressly identified in Schedule 2.01 as a Purchased Asset, Buyer shall assume no Liability whatsoever of the Seller, whether or not arising from or related to the Seller, the Business or any Purchased Assets (the "Excluded Liabilities"), and the Seller shall pay, perform and discharge as and when due each such Excluded Liability. Without limiting the generality of the foregoing, the Excluded Liabilities shall include, and under no circumstances shall Buyer be deemed to assume, any Liability of the Seller arising out of or relating to . . .
>
> (c) any actual or alleged tortious conduct of Seller or any of its officers, employees or agents; . . .
>
> (i) any Liability relating to the ownership, operation, use or disposal of any Excluded Assets; . . .
>
> (n) any Liability arising out of any business activity or operations of the Seller after the Effective Time;
>
> (o) any Liability under or arising by reason of this Agreement, or incurred in connection with the transactions contemplated by this agreement.

(p) any claims, chose in action, causes of action, rights of recovery, rights of set-off, or grievances of any kind of any third party. . . arising out of the conduct of the Seller, the Business, any other business or operations of the Seller, or the ownership of any Purchased Assets prior to the Effective Time.[11]

This language makes it clear that no transfer of liability was intended between Allied Capital and Allied Corp.

The allegations in the Second Amended Complaint also do not support the application of successor liability under Texas law. While the Government vaguely implies that there was a fraudulent conveyance, and there are a number of factual allegations implying the gravamen of the Complaint is fraudulent conveyance, the Complaint never asserts that this was the primary purpose behind Allied Corp's acquisition of Allied Capital.[12]   The Complaint is not sufficiently pled to permit the Government to stand on this exception.   Accordingly, under Texas law, Allied Corp is not liable as a continuation of Allied Capital.

### C.   The Complaint does not include specific allegations against Allquest

In its Response, the Government argues that that the Complaint raises FIRREA counts against "Allied Corp for its own false statements to the FHA starting in late 2010 and early 2011."[13]   However, upon review of the Complaint, the Court finds these allegations insufficiently pled.   The Government does not clearly indicate whether the

---

[11] *Allied Home Mortg. Corp. v. Donovan,* 830 F. Supp. 2d. at 223

[12] The argument may be "inserted subtly into the design," but it must still be identifiable. *See, e.g.*, http://en.wikipedia.org/wiki/Hidden_Mickey.

[13] Dkt. #69 at 68.  The Government refers the Court to paragraphs 7, 55, and 76-78 in the Second Amended Complaint.

allegations are directed against Allied Corp independently or against Allied Corp as the successor to Allied Capital.

### D. Opportunity to Amend Complaint

In its Response, the Government has requested an opportunity to amend its Complaint in the event that its claims are found deficient. In the interest of justice, the Government will be granted 14 days to amend its Complaint.

## CONCLUSION

Based on the foregoing, the Court concludes that the Government has adequately pled claims under both the FCA and FIRREA. Accordingly, it is **ORDERED** that Allquest's Motion to Dismiss be **GRANTED**. The Government is **GRANTED 14** days to amend its Complaint.

SIGNED at Houston, Texas on September ___9___ , 2013.

_George C. Hanks_
George C. Hanks, Jr.
United States Magistrate Judge