United States District Court
Southern District of Texas
**ENTERED**
October 11, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff-Intervenor,<br>v.<br><br>ALLQUEST HOME MORTGAGE CORPORATION, f/k/a ALLIED HOME MORTGAGE CORPORATION, AMERICUS MORTGAGE CORPORATION, f/k/a ALLIED HOME MORTGAGE CORPORATION, JIM C. HODGE, and JEANNE L. STELL,<br><br>Defendants. | No. 4:12-cv-2676-GCH<br><br>STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL AS TO DEFENDANT JEANNE STELL |

WHEREAS, this Stipulation and Order of Partial Settlement and Dismissal (the "Stipulation") is entered into between plaintiff the United States of America (the "United States" or the "Government"), by its attorney, Kenneth Magidson, United States Attorney for the Southern District of Texas, and defendant Jeanne L. Stell ("Stell"), by her attorneys, Hilder & Associates, P.C. and Vinson & Elkins LLP (collectively, the "Parties");

WHEREAS, from at least January 2001 through October 2007, March 2008 through October 2008 and from October 2009 through November 2013 (the "Covered Period"), Stell was employed by defendants Americus Mortgage Corporation, formerly known as Allied Home Mortgage Capital Corporation ("Allied Capital"), and Allquest Home Mortgage Corporation, formerly known as Allied Home Mortgage Corporation ("Allied Corporation," and collectively with Allied Capital, the "Allied Companies"), or an affiliated company. From approximately 2002 through October 31, 2007, Stell was employed as a Vice President for Allied Capital. From

March 2008 through October 2008, Stell did not work at the Allied Companies' headquarters, but worked instead as a branch manager for Allied Capital

WHEREAS, the United States Department of Housing and Urban Development ("HUD"), through its Federal Housing Administration ("FHA"), offers various mortgage insurance programs that insure approved lenders against losses on mortgage loans made to homebuyers;

WHEREAS, under HUD's Direct Endorsement Program, a direct endorsement lender ("DEL") can act as a sponsor lender by underwriting and funding proposed mortgages by its loan correspondents, without a detailed review by HUD of the application for mortgage insurance before the closure of the proposed loan;

WHEREAS, Allied Capital is a Texas corporation that was, until December 31, 2010, a HUD-approved FHA loan correspondent authorized to originate HUD-insured mortgage loans for sale or transfer to other qualifying mortgagees, known as "sponsor" mortgagees.  In May 2010, Allied Capital sold substantially all of its assets to Allied Corporation and soon thereafter reopened Allied Capital's branch offices as branches of Allied Corporation;

WHEREAS, Allied Corporation is a Texas corporation that is a HUD-approved DEL, and thus was authorized to "sponsor" loans originated by Allied Capital by underwriting and endorsing those loans for HUD insurance;

WHEREAS, defendant Jim C. Hodge ("Hodge") is the founder, owner, president, chief executive officer, and sole director of the Allied Companies;

WHEREAS, in or about May 2011, relator Peter Belli ("Relator"),a former branch manager for Allied Capital, now deceased, filed a *qui tam* action against Allied Capital in the United States District Court for the District of Massachusetts pursuant to 31 U.S.C. § 3730(b), the *qui tam*

provision of the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA"), which was transferred to the United States District Court for the Southern District of New York in or about August 2011;

WHEREAS, on November 1, 2011, the United States filed a complaint-in-intervention, and the action was thereafter transferred to the United States District Court for the Southern District of Texas (the "Court") on September 4, 2012;

WHEREAS, on October 24, 2013, the United States filed its Third Amended Complaint (the "Federal Complaint") in the action, asserting claims against Allied Capital, Allied Corporation, and Hodge under the FCA, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a ("FIRREA"), and the common law theory of indemnification; and claims against Stell under FIRREA;

WHEREAS, the Federal Complaint alleges, among other things, that the Allied Companies (i) originated loans out of unapproved "shadow branches," while falsely certifying to HUD that the loans had originated from HUD-approved branches; (ii) falsely certified to HUD that the Allied Companies paid the operating costs of its branches, when in fact the Allied Companies forced branch managers to assume that responsibility; (iii) falsely certified to HUD that the Allied Companies complied with all HUD requirements for maintaining a quality control program, and that Allied Capital had not been sanctioned by state regulators; and (iv) falsely certified to HUD that loans underwritten by Allied Corporation, pursuant to its status as a HUD-approved DEL, were eligible for FHA insurance, despite Allied Corporation's systemic pattern of recklessly underwriting those loans.

WHEREAS, the Federal Complaint alleges, among other things, that during the Covered Period, Stell made, or caused to be made, false annual certifications and false Form 92001-B

branch certifications to HUD on behalf of the Allied Companies (together with all other allegations against Stell in the Federal Complaint, the "Covered Conduct");

WHEREAS, the Parties have reached a mutually agreeable resolution addressing the Covered Conduct through this Stipulation;

WHEREAS, as part of this resolution, Stell has provided sworn financial disclosures to the United States setting forth her ability to pay a judgment against her and has agreed to make payment based on the Government's assessment of her ability to pay a judgment against her, and not on a calculation of actual damages or civil penalties for which she or any defendant may be liable in this action;

NOW, THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

## TERMS AND CONDITIONS

1. The Parties consent to the Court's exercise of subject matter jurisdiction over this action and personal jurisdiction over each of them.

2. Stell hereby admits, acknowledges, and accepts responsibility for the following conduct:

   a. From January 2001 through October 2007, March 2008 through October 2008 and from October 2009 through November 2013, Stell was employed by the Allied Companies, or an affiliated company. During a portion of that period of time, from approximately 2002 through October 31, 2007, Stell was employed by the Allied Companies as a Vice President for Allied Capital. In addition, from October 2009 through November 2013, Stell performed licensing, quality control and other compliance-related activities on behalf of the Allied Companies.

   b. HUD rules require that FHA-approved mortgagees pay all of their own operating expenses, and that any branch compensation plan that includes payment of a branch's operating expenses by the branch manager, another employee, or a third party is prohibited. See HUD Handbook 4060.1, REV-2, para. 2-14(B). The Allied Companies were required to comply with all HUD/FHA rules and regulations concerning the payment of operating expenses.

   c. Stell knew that, as to most of the operating expenses of the Allied Companies' branches, the Allied Companies paid those expenses from an account that

belonged to the Allied Companies but which consisted entirely of revenue belonging to the respective branch; that the Allied Companies had a policy in some states of requiring branches to enter into leases for office space and office equipment in their own name rather than in the name of the Allied Companies; and that some branch managers were required to bear the expenses of opening up a new branch.

d. Despite the Allied Companies' practices regarding HUD/FHA rules concerning the payment of branch operating expenses, described in subparagraph c above, Stell knew that the Allied Companies certified to HUD on Form 92001-B branch certifications that they fully complied with all HUD/FHA requirements, including a specific certification that the lender would pay the branches' operating expenses.

e. HUD rules require both loan correspondents and DELs, in order to maintain HUD/FHA approval, to implement and continuously maintain an internal quality control program ensuring that trained, independent, and sufficient staff perform timely branch audits and post-closing reviews of certain loans, including all early payment defaults (*i.e.,* loans defaulting within the first six months). *See* HUD Handbook 4060.1, REV-2, ch. 7; 24 C.F.R. § 202.5(b), (h). The Allied Companies were required to comply with HUD/FHA rules concerning quality control.

f. Stell knew that in the fiscal years ending in June 2004, June 2006 and June 2007, the Allied Companies failed to maintain adequate, independent quality control staffing. Stell further knew, at least as of May 2005, that the Allied Companies failed to perform timely branch audits and post-closing quality control reviews, and failed to properly review and verify loan documents.

g. Stell signed annual certifications on behalf of Allied Capital for the fiscal years July 1, 2003, through June 30, 2004, July 1, 2005, through June 30, 2006, and July 1, 2006, through June 30, 2007, all of which were submitted to HUD, certifying that Allied Capital conformed to HUD/FHA requirements including that it had implemented and maintained a quality control program.

h. HUD rules require a lender that has been subject to a sanction or action against its state license to submit documentation to HUD concerning the action. *See* HUD Handbook 4060.1, REV-2, para. 2-3. The Allied Companies were required to comply with HUD's reporting requirements concerning state sanctions.

i. Stell knew that Allied Capital had paid a fine to a state regulator in December 2006. Nevertheless, Stell signed an annual certification for the fiscal year July 1, 2006 through June 30, 2007, which was submitted to HUD on Allied Capital's behalf, certifying that Allied Capital had not been sanctioned by a state regulator.

3.  Stell agrees to the entry of judgment (the "Judgment") (in the form attached as Exhibit A) against her and in favor of the United States, in full compromise and satisfaction of the allegations against her set forth in the Federal Complaint, for the sum of twenty-five thousand dollars ($25,000) (the "Settlement Amount"). The Settlement Amount shall constitute a debt due and owing to the United States upon entry of this Stipulation and Order by the Court, and is to be discharged by payment to the United States under the following terms and conditions:

   a.  Stell shall pay five thousand dollars ($5,000) (the "Lump Sum Payment") to the United States no later than fifteen business (15) days after the Effective Date of this Stipulation. Payment of this amount shall be made at http://www.pay.gov to the United States Department of Justice account in accordance with instructions provided by the United States, or through an alternative mechanism agreed to in writing by the United States.

   b.  No later than December 31, 2016, and every December 31 thereafter until and including December 31, 2020, Stell shall provide to the United States, at the address indicated in Paragraph 23 below, Financial Statements and any other information about her assets and income that the United States may reasonably require (the "Updated Financial Information"). The United States shall have the right, based on the Updated Financial Information, to require Stell to remit payments ("Additional Payments") in addition to the Lump Sum Payment, up to a combined maximum of the Settlement Amount ($25,000).

   c.  Conditioned on Stell's timely submission of Updated Financial Information to the Government as provided in the previous subparagraph, the United States agrees that: *(i)* no demand for Additional Payments based on the Updated Financial Information shall be made to Stell after April 15, 2021, and *(ii)* payment in full of the Lump Sum Payment, as well as any Additional Payments demanded prior to April 15, 2021, shall be deemed to fully satisfy and discharge the Judgment.

   d.  The United States shall be permitted to file the Judgment in any and all counties in which Stell resides or owns any real or personal property, and that such filing shall be a lien on such property.

4.  Stell (a) shall truthfully and completely disclose all information with respect to her own activities and the activities of others concerning all matters related to the Covered Conduct about which the United States inquires of her, which information can be used for any purpose; (b) shall cooperate fully with the United States, and any other law enforcement agency designated by

6

the United States, in connection with this action and any investigation or litigation related to the Covered Conduct; (c) shall attend all meetings at which the United States requests her presence in connection with this action or any investigation or litigation relating to the Covered Conduct; (d) shall provide to the United States, upon request, any document, record, or other tangible evidence relating to this action or Covered Conduct about which the United States or any designated law enforcement agency inquires of her; and (e) shall provide truthful declarations or testify truthfully at any trial, deposition, or other proceeding in this action or with respect to any matters relating to the Covered Conduct about which the United States may request her declaration or testimony.

5. Stell has provided sworn financial disclosure statements and other financial information to the United States ("Financial Statements"), and the United States has relied on the accuracy and completeness of those Financial Statements in entering into this Stipulation. Stell warrants that the Financial Statements are thorough, accurate, and complete. Stell further warrants that she does not own or have an interest in any asset(s) thathas/have not been disclosed in the Financial Statements, and that she has made no misrepresentations on, or in connection with, the Financial Statements. In the event the United States learns of: (a) an asset(s) in which Stell had an interest at the time of this Stipulation that would change the estimated net worth of Stell set forth in the Financial Statements by five thousand dollars ($5,000) or more, and which was not disclosed in the Financial Statements, or (b) a misrepresentation by Stell in, or in connection with, the Financial Statements, and in the event such non-disclosure or misrepresentation changes the estimated net worth of Stell set forth in the Financial Statements by five thousand dollars ($5,000) or more, the United States may at its option: (1) rescind this Stipulation and Order and reinstate the claims in the Federal Complaint against Stell in this action, or (2) let the Stipulation and Order

stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the additional or increased net worth that Stell had previously not disclosed or concealed or dissipated. To the extent that the United States discovers the occurrence of an event(s) encompassed by subparts (a) through (b) of this paragraph, Stell agrees not to contest any collection action undertaken by the United States pursuant to this provision, and agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims, except to the extent these defenses were available on the Effective Date.

6. As of the Effective Date of this Stipulation, Stell agrees to an indefinite debarment pursuant to 2 C.F.R. Parts 180 and 2424, and thereby agrees that she will not participate in any procurement or non-procurement transaction, as a participant or principal, with HUD or any other agency of the Executive Branch of the United States. Stell may seek reconsideration of her debarment pursuant to 2 C.F.R. § 180.875 no earlier than ten years from the Effective Date of this Stipulation. In the event that Stell fails to comply with the requirements of this paragraph, the Government shall have the right to investigate such non-compliances and seek all appropriate remedies, including civil and/or criminal contempt.

7. Contingent upon Stell's full compliance with the terms of this Stipulation, and subject to any exceptions, qualifications or reservations set forth in this Stipulation, the Government releases Stell from any civil or administrative monetary claims that the Government has for the Covered Conduct under the FCA, 31 U.S.C. § 3729 *et seq.*, FIRREA, 12 U.S.C. § 1833a, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801, and the common law theories of payment by mistake and unjust enrichment; provided, however, that nothing in this Stipulation shall be construed as a release of

any claims that the Government has, or may have, against any other individual or entity in connection with the Covered Conduct.

8. Notwithstanding the releases given in Paragraph 7 of this Stipulation, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

    a. Any liability arising under Title 26, United States Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Any non-monetary administrative liability, including the supervision and debarment rights of any federal agency;

    d. Any liability to the Government (or its agencies) for any conduct other than the Covered Conduct; and

    e. Any liability based upon obligations created by this Stipulation.

9. Should Stell fail to make the payments required in Paragraph 3(a) or 3(b), or fail to comply with any other obligation applicable to her under the Stipulation, she shall be in default of this Stipulation ("Default"). The United States will provide written notice of any Default in the manner set forth in Paragraph 23 below. Stell shall then have an opportunity to cure the Default within thirty (30) calendar days from the date of delivery of the notice of Default. In the event that a Default is not fully cured within thirty (30) calendar days of the delivery of the notice of Default ("Uncured Default"), the full Judgment shall immediately be due and payable and may be executed on, and interest shall accrue at the rate of 9% per annum compounded annually on the remaining unpaid principal balance, beginning thirty (30) calendar days after delivery of the notice of Default. In the event of an uncured Default, Stell agrees that in addition to taking action to collect on the Judgment, the Government, at its option, may: (a) rescind this Stipulation and reinstate the claims in the Federal Complaint against Stell; (b) seek specific performance of the

Stipulation to cure any Default; (c) offset the remaining unpaid balance from any amounts due and owing Stell by any department, agency or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. In the event that the United States opts to rescind this Stipulation pursuant to this paragraph, Stell shall not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims which relate to the Covered Conduct, except to the extent those defenses were available on the Effective Date (defined below). Stell shall not contest any offset imposed or any collection action undertaken by the Government pursuant to this paragraph, either administratively or in any court. In addition, Stell shall pay the Government all reasonable costs of collection and enforcement under this paragraph, including attorney's fees and expenses. In the event that the United States opts to seek specific performance of the Payment Conditions, interest shall accrue at the rate of 9% per annum compounded annually on any payments that are due and owing under the Payment Conditions, beginning thirty (30) calendar days after delivery of the notice of Default.

10. Nothing in this Stipulation constitutes an agreement by the United States concerning the characterization of the Judgment for purposes of the Internal Revenue Laws, Title 26 of the United States Code.

11. Stell releases the Government and its agencies, officers, agents, employees, and servants from any claims that Stell has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct, as well as the Government's investigation, prosecution, and settlement thereof.

12. This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

13. Stell represents and warrants that she has reviewed her financial situation, that she is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and that she reasonably believes that she shall remain solvent following compliance with this Stipulation. Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Stell, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Stell was or became indebted on or after the date of this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

14. If within 91 calendar days of the Effective Date of this Stipulation or of any payment made under this Stipulation, Stell commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Stell's debts, or seeking to adjudicate Stell as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Stell or for all or any part of her assets, Stell agrees as follows:

    a. Stell's obligations under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and Stell shall not argue or otherwise take the position in any such case, proceeding, or action that: *(i)* Stell's obligations under this Stipulation may be avoided under 11 U.S.C. § 547; *(ii)* Stell was insolvent at the time this Stipulation was entered into; or *(iii)* the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to Stell.

    b. If Stell's obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under Title 11, United States Code (the Bankruptcy Code), the Government, at its sole

option, may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Stell for the claims that would otherwise be covered by the releases provided in Paragraph 7 above. Stell agrees that *(i)* any such claims, actions, or proceedings brought by the Government are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and Stell shall not argue or otherwise contend that the Government's claims, actions, or proceedings are subject to an automatic stay; *(ii)*Stell shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the Government within 60 calendar days of written notification to Stell that the releases have been rescinded pursuant to this paragraph, and *(iii)* the Government has a valid claim against Stell in the amount of $25,000, and the Government may pursue its claim in the case, action, or proceeding referenced in the first clause of this paragraph, as well as in any other case, action, or proceeding.

    c.    Stell acknowledges that her agreements in this paragraph are provided in exchange for valuable consideration provided in this Stipulation.

15.    Stell agrees to the following:

    a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Stell in connection with:

        i.    the matters covered by this Stipulation;

        ii.    the Government's audit(s) and civil and/or criminal investigation(s) of the matters covered by this Stipulation;

        iii.    Stell's investigation, defense, and corrective actions undertaken in response to the Government's audit(s) and civil and/or criminal investigation(s) in connection with the matters covered by this Stipulation (including attorney's fees);

        iv.    the negotiation and performance of this Stipulation;

        v.    any payments Stell makes to the Government pursuant to this Stipulation,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

    b.    Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Stell, and Stell shall not charge

        such Unallowable Costs directly or indirectly to any contract with the Government.

    c.    Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Stipulation, Stell shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Stell or any of her agents from the United States. The United States, including the Department of Justice and/or the affected agencies, reserve the right to audit, examine, or re-examine Stell's books and records and to disagree with any calculations submitted by Stell regarding any Unallowable Costs including in payments previously sought by Stell, or the effect of any such Unallowable Costs on the amount of such payments.

16.    Each Party shall bear its own legal and other costs incurred in connection with this matter.

17.    Any failure by the United States to insist upon the strict performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the United States, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Stipulation.

18.    This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of Texas. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party in any subsequent dispute.

19.    Subject to the exceptions set forth in this Stipulation, and in consideration of the obligations of Stell in this Stipulation, and conditioned upon Stell's full compliance with the terms of this Stipulation, the Government shall dismiss with prejudice the claims against Stell (and only Stell) in the Federal Complaint; provided, however, that nothing in this Stipulation shall require the Government to dismiss the claims it has asserted against any other individual or entity in the Complaint; and provided further that nothing in this Stipulation shall preclude the Government

from amending the Federal Complaint to assert claims against any additional individuals or entities; and provided further that the Court shall retain jurisdiction over the Stipulation and each Party to enforce the obligations of each Party under this Stipulation.

20. This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written consent of the Parties.

21. The undersigned counsel and any other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and/or entities indicated below.

22. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

23. Any notices pursuant to this Stipulation shall be in writing and shall be delivered by hand, express courier, or e-mail followed by postage pre-paid mail, and shall be addressed as follows:

**IF TO THE UNITED STATES**:

Jeannette A. Vargas
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Email: jeannette.vargas@usdoj.gov

**IF TO STELL**:

Philip H. Hilder, Esq.
Hilder & Associates, P.C.
819 Lovett Boulevard
Houston, Texas 77006

**IF TO STELL**:

Philip H. Hilder, Esq.
Hilder & Associates, P.C.
819 Lovett Boulevard
Houston, Texas 77006
Email: philip@hilderlaw.com

24. The Effective Date of this Stipulation is the date upon which this Stipulation is entered by the Court.

SO ORDERED:

_____          October 11, 2016
HONORABLE GEORGE C. HANKS JR.       Date
UNITED STATES DISTRICT JUDGE

Agreed to by:

KENNETH MAGIDSON                    HILDER & ASSOCIATES P.C.
United States Attorney for the
Southern District of Texas          By: _____
                                    Philip Hilder
By: _____       Stephanie McGuire
Jeannette A. Vargas                 819 Lovett Blvd.
Joseph N. Cordaro                   Houston, Texas 10007
Jean-David Barnea
Special Assistant United States Attorneys    Crystal Y'Barbo Stapley
86 Chambers Street, Third Floor     Vinson & Elkins LLP
New York, New York 10007            2200 Pennsylvania Ave. NW, Ste 500W
*Attorneys for the Government*      Washington, D.C. 20037
                                    *Attorneys for Jeanne Stell*

                                    _____
                                    Jeanne Stell

15